ASOCIACIÓN DE EMPLEADOS DE LA BAYAMÓN TRANSIT COMPANY y BAYAMÓN TRANSIT COMPANY, sustituída por BAYAMÓN TRANSIT COMPANY, SUCESORA, peticionarias, *v.* JUNTA INSULAR DE RELACIONES DEL TRABAJO ET AL., recurridos.

Núm. 4.—*Sometido:* Febrero 2, 1949. *Resuelto:* Julio 15, 1949.

*José E. Bosch Roqué,* abogado de la Asociación de Empleados aquí peticionaria; *Héctor Ramos Mimoso, Juan Enrique Géigel* y *Guillermo Silva,* abogados de la peticionaria Bayamón Transit Company; *Hon. Procurador General Vicente Géigel Polanco (José C. Aponte, Procurador General Interino,* en el alegato), *A. Torres Braschi, Procurador General Auxiliar,* y *Carlos J. Faure,* abogados de la Junta recurrida; *C. H. Juliá,* abogado de la Unión Local de Chóferes de Guaynabo.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Este caso requiere que determinemos el efecto de la Ley Taft–Hartley sobre la jurisdicción de la Junta Insular de Relaciones del Trabajo para impedir prácticas ilícitas de trabajo por parte de los patronos que operan negocios predominantemente locales en Puerto Rico.

La Bayamón Transit Company se dedicaba al negocio de transporte de pasajeros en guaguas entre Bayamón y Río Piedras. Luego de radicarse una querella y celebrarse la correspondiente vista, el 22 de mayo de 1947, la Junta insu-

lar dictó una decisión ordenándole a la compañía que cesara y desistiera de (a) intervenir con sus empleados en el ejercicio de sus derechos a organizarse entre sí, (b) rehusar negociar colectivamente con la Unión Local de Chóferes de Guaynabo como la representante exclusiva de sus empleados, y (c) ayudar al establecimiento y mantenimiento de la Asociación de Empleados de la Bayamón Transit Company. Asimismo se ordenó afirmativamente a la compañía que negociara colectivamente con la unión de chóferes y que retirara el reconocimiento a la Asociación. El 15 de julio de 1947 la Junta declaró sin lugar una moción de reconsideración. El 24 de julio de 1947 la compañía radicó una petición para que se revisara la orden de la Junta, todo de conformidad con el artículo 9(2)(b) de la Ley núm. 130, Leyes de Puerto Rico, 1945 (pág. 407), según fué enmendada por la Ley núm. 6, Leyes de Puerto Rico, 1946 ((1) pág. 19).(¹)

█ El primer error señalado es que la Junta carecía de jurisdicción. A nuestros fines, la fecha en que la Ley Taft–Hartley entró en vigor fué el 22 de agosto de 1947. Cuando la Junta declaró sin lugar la moción de reconsideración el 15 de julio de 1947, la Ley Wagner todavía estaba en vigor. Por tanto examinaremos primeramente el problema de si la Ley Wagner, 29 U.S.C. secs. 151 *et seq.,* le impedía a la Junta insular actuar en este caso.

Haciendo uso de la autoridad conferídale por la cláusula de comercio de la Constitución, el Congreso dispuso en la sección 2(6) de la Ley Wagner que la Junta Nacional tendrá jurisdicción para impedir prácticas ilícitas de trabajo en los Estados Unidos continentales solamente si tales prácticas afectan el comercio interestatal. Pero el Congreso tiene poder plenario para legislar para Puerto Rico en virtud de la cláusula sobre territorios de la Constitución. En consecuencia, cuando legisla para Puerto Rico, no lo restringen

---

(¹))Mientras el caso estaba pendiente ante este Tribunal, declaramos con lugar una moción de la Bayamón Transit Company, Sucesora, para que se le sustituyera en lugar de la peticionaria.

las limitaciones de la cláusula de comercio. *Buscaglia* v. *Ballester,* 162 F.2d 805, *certiorari* denegado, 332 U.S. 816. El Congreso ejercitó este poder plenario sobre Puerto Rico al proveer en la sección 2(6) que la Ley Wagner era aplicable no solamente a los patronos cuyas operaciones afectasen al comercio interestatal, si que también a los patronos que como la aquí peticionaria operan negocios en Puerto Rico puramente locales. *N.L.R.B.* v. *González Padín Co.,* 161 F.2d 353, 355 (C.C.A. 1, 1947); casos coleccionados en 1 CCH *Labor Law Reporter,* pág. 1616.

 Mientras estuvo vigente la Ley Wagner, Puerto Rico y algunos estados aprobaron leyes regulando las relaciones obreras. Entonces surgió la cuestión de si las juntas estatales y de Puerto Rico tenían jurisdicción concurrente con la Junta Nacional para impedir prácticas ilícitas de trabajo enumeradas en la Ley Wagner cometidas por patronos sujetos a la Ley Federal. La proposición general que impera aquí es fácil de exponer. Legislación local no en conflicto con una Ley Federal puede ser aprobada cubriendo la misma materia que la Ley Federal a menos que (1) exista una prohibición expresa en la Ley Federal contra acción estatal, o (2) la naturaleza de la materia o la legislación Federal haga surgir la inferencia de que se trata de un asunto de la exclusiva incumbencia del gobierno nacional. *California* v. *Zook,* 336 U.S. 735, 93 L.ed. 796; *Puerto Rico* v. *Shell Co.,* 302 U.S. 253; *Chabrán* v. *Bull Insular Line, Inc.,* 69 D.P.R. 269, 290-92, y casos citados. En cuanto a (2), la dificultad estriba en la aplicación de la regla general a una situación específica.

 Algunas cortes estatales asumieron la posición de que la Ley Wagner ni expresamente ni por implicación prohibía legislación estatal dentro del campo cubierto por dicha Ley. Por consiguiente resolvieron que sus Juntas estatales tenían jurisdicción concurrente y podían proceder bajo sus leyes locales para decidir casos aun cuando éstos envolvie-

ran prácticas ilícitas de trabajo comprendidas en la Ley Wagner y cometidas por patronos que estaban sujetos a esta última, siempre y cuando que la ley local no estuviera en conflicto con la Ley Federal y la Junta Nacional no hubiera asumido jurisdicción en el caso específico. *Davega City Radio* v. *State Labor Relations Board,* 22 N.E.2d 145 (N.Y., 1939); *Wisconsin Labor Relations Board* v. *Fred Rueping L. Co.,* 279 N.W. 673 (Wis., 1938). Estos casos llegaron a esta conclusión aun cuando la sección 10(*a*) de la Ley Wagner disponía que el poder de la Junta para impedir cualquier práctica ilícita de trabajo enumerada en la Ley y que afecte el comercio "será exclusivo, y no será afectado por cualquier otro medio de resolución o prevención que se haya o sea establecido mediante convenio, código, ley o en alguna otra forma."

Otras sostenían que la Ley Wagner ocupó el campo y suplantó, por lo menos por implicación, toda legislación estatal en cuanto a prácticas ilícitas de trabajo enumeradas en la Ley Wagner y cometidas por patronos sujetos a la ley. Su teoría fué que esta regla prevalecía aun donde (1) no había conflicto entre la Ley Federal y las estatales y (2) la Junta Nacional no había asumido jurisdicción. Véase el escolio 6.

La Corte Suprema ha resuelto en una serie de casos que la sección 10(*a*) de la Ley Wagner no excluyó expresamente acción estatal. *Bethlehem Co.* v. *State Board,* 330 U.S. 767; *La Crosse Teleph. Corp.* v. *Wisconsin Empl. Rel. Bd.,* 336 U.S. 18, 93 L.ed. 265; *International Union* v. *Wisconsin Empl. Rel. Bd.,* 336 U.S. 245, 93 L.ed. 510, 515; *Algoma P. & V. Co.* v. *Wisconsin Empl.Rel.Bd.,* 336 U.S. 301, 93 L.ed. 541, 545–46. Dijo en el caso de *Bethlehem* a la pág. 771: "El Congreso no ha creído conveniente fijar aún las más generales normas para la interpretación de la ley, según lo hace a menudo, diciendo que su reglamentación excluirá o no la acción estatal." Pero dijo a la pág. 772: "Por mucho tiempo la regla ha sido que

la exclusión de acción estatal puede inferirse de la naturaleza de la legislación y la materia envuelta, si bien está ausente una declaración expresa de tal resultado.'' Y predicó sus decisiones anulando resoluciones de Juntas estatales en los casos de *Bethlehem* y *La Crosse* en los hechos (1) de que la Junta Nacional había asumido jurisdicción en las industrias en cuestión, aun cuando no en estos casos específicos, y (2) que las leyes estatales y Federal disponían diferentes normas de reglamentación para los problemas específicos ante la corte.([2])

La cuestión precisa de si la Ley Wagner por implicación excluyó la acción estatal, aun donde no había conflicto entre las leyes estatales y Federal y donde la Junta Nacional tenía jurisdicción, pero no la ejercitó, fué expresamente dejada sin resolver por los casos de *Bethlehem* y *La Crosse.* En el primero la corte dijo a la pág. 776: ''Las Juntas Nacional y Estatales han hecho un esfuerzo encomiable para evitar conflicto cuando los estatutos traslapan entre sí. Nada encontramos en sus negociaciones, sin embargo, que afecte la interpretación del estatuto federal o la cuestión de poder constitucional en tanto en cuanto éstas están envueltas en este caso, toda vez que la Junta Nacional no hizo concesión o delegación de poder para tratar este asunto. La elección de la Junta Nacional para declinar jurisdicción en ciertas clases de casos, por motivos económicos o de otra índole, presenta un problema diferente que no decidimos ahora.''

En vista de esta manifestación y del hecho de que los casos

---

([2])En el caso de *La Crosse* la Corte Suprema consideró el efecto tanto de la Ley Wagner como de la Ley Taft–Hartley sobre leyes estatales. Reafirmando la doctrina establecida en el caso de *Bethlehem,* la corte dijo en 93 L.ed. a la pág. 269 que bajo ambos estatutos Federales ''La Junta Nacional tenía jurisdicción sobre la industria a que se dedican estos patronos específicos y *había asumido el control de sus relaciones obreras en general.* Tanto los estatutos federales como los estatales comprendían el mismo nexo *y habían provisto diferentes normas para su reglamentación.* Toda vez que los patronos en cuestión estaban sujetos a reglamentación por la Junta Nacional, vimos la situación plagada de conflicto potencial para permitir la intervención de la agencia estatal, aun cuando la Junta Nacional no hubiera actuado en los casos específicos ante nos.'' (Bastardillas nuestras).

de *Bethlehem* y *La Crosse* fueron expresamente fundamentados en (1) que la Junta Federal asumió jurisdicción y (2) las diferentes normas de reglamentación en las Leyes Federal y estatales para el problema específico, la Corte Suprema de Wisconsin sostuvo la jurisdicción concurrente de su Junta estatal cuando estuvieran ausentes estos dos factores. *International Union, etc.* v. *Wisconsin Employ. Rel. Bd.*, 27 N.W.2d 875, 883 (Wis., 1947).(³) Y esta posición fué fortalecida en aquellas jurisdicciones donde como en Nueva York y Puerto Rico las Juntas Nacional y estatal tenían convenios disponiendo la división de trabajo. Ackerman, *The Problem of Jurisdiction of National and State Labor Relations Boards*, 2 *Industrial and Labor Relations Review* 360, 364 (abril de 1949); 12 Fed.Reg. 3443; véase escolio 5.

Todos los factores que indujeron a algunas Juntas estatales a continuar ejercitando jurisdicción concurrente aun después del caso de *Bethlehem*, están presentes en este caso. En virtud de la disposición de la sección 2(6) ejercitando el poder plenario del Congreso para legislar localmente para Puerto Rico, la peticionaria si bien dedicada a un negocio enteramente local, estaba sujeta a la Ley Wagner. Las prácticas ilícitas del trabajo que específicamente se imputan aquí, están cubiertas tanto por la Ley Federal como por la insular; pero, hasta donde sepamos, no existen diferencias sustanciales en sus normas de reglamentación para estas prácticas específicas.(⁴) La Junta Nacional no ha asumido jurisdicción

(³)La Corte Suprema confirmó la sentencia en el caso de *International Union* en 336 U.S. 245, 93 L.ed. 510. Pero no pasó sobre este punto. Por el contrario, basó su decisión de que la Ley de Wisconsin era aplicable en la teoría de que la cuestión envuelta no estaba cubierta por la Ley Federal.

En *La Crosse Telephone Corp.* v. *Wisconsin Empl. Rel. Bd.*, 30 N.W.2d 241 ( Wis., 1947), la corte, siguiendo su opinión en *International Union*, reiteró su criterio de que la Junta local tenía jurisdicción concurrente. Pero aquí también se dejó pendiente esta cuestión toda vez que la Corte Suprema revocó el caso en 93 L.ed. 265 por el fundamento de que las leyes estaban en conflicto en cuanto al problema específico ante ella.

(⁴)Las sanciones adicionales contempladas por la sección 11 de la Ley núm. 130, según fué enmendada por la núm. 6, no constituyen una norma diferente de reglamentación propiamente dicha.

en este caso específico o en esta industria en general. Y al mismo tiempo en que la Junta insular dictó su orden, un convenio entre las Juntas Nacional e Insular disponía una división del trabajo bajo la cual el presente caso caía dentro de la jurisdicción local de la Junta Insular.(5) Por consiguiente asumiremos, sin decidirlo, que mientras la Ley Wagner estuvo en vigor la Junta Insular tenía jurisdicción para dictar la orden que estamos revisando.(6)

█ Sin embargo, la dificultad es que mientras la solicitud de la compañía para que revisemos la orden de la Junta Insu-

(5) En 1945 las Juntas Nacional e Insular otorgaron un convenio de acuerdo con la sección 4(a) de la Ley Wagner mediante el cual la última entendería de ciertas clases de casos, considerados propios para la Junta Nacional, como agente de la Federal. 10 Fed.Reg. 10130; Primer Informe Anual de la Junta Insular, págs. 11–12. Este convenio fué modificado en 1947 de suerte que un número menor de casos sería resuelto por la Junta Nacional. Segundo Informe Anual de la Junta Insular, págs. 8–9. Pero bajo cualquiera de estos convenios, si un caso era tratado como uno de la Junta Nacional, la Junta Insular actuaba meramente como agente de la Federal. Cualquier resolución dictada en tal caso sería por tanto puesta en vigor por la Corte de Apelaciones para el Primer Circuito, y no por este Tribunal.

Por otro lado, ambos convenios "tenían por miras que todos los otros casos serían resueltos bajo la Ley de Relaciones del Trabajo de Puerto Rico." El presente caso claramente pertenecía a esta categoría. En consecuencia, en cuanto a tales casos, estos convenios eran sustancialmente los mismos que el convenio entre las Juntas Nacional y de Nueva York para una división del trabajo. Véase Apéndice a la opinión separada del Juez Frankfurter en *Bethlehem Co.* v. *State Board*, supra, pág. 784 *et seq.*

(6) Aun cuando asumimos, sin decidirlo, que tal jurisdicción concurrente existía bajo la Ley Wagner, notamos de paso que después del caso de *Bethlehem*, cortes de Pensilvania y de Minesota resolvieron lo contrario. *Pittsburgh Rys. Co. Substation O. and M. Emp. Case*, 54 A.2d 891 (Pa., 1947); *Linde Air Products Co.* v. *Johnson*, 77 F.Supp. 656 (Minn., 1948); 61 Harv.L.Rev. 840, 842, escolio 19.

Algunos comentaristas encontraron en el caso de *Bethlehem* insinuaciones de que se excluía toda actuación estatal en el campo que la Ley Wagner cubría. 42 Ill.L.Rev. 500, 501; Somers, *The National Labor Relations Board from Wagner to Taft–Hartley. A Study in Transition and Adaption.* IX Federal Bar Journal 315, 339; Teller, *Labor Disputes and Collective Bargaining*, sec. 270, págs. 735–6; *cf.* 61 Harv.L.Rev. 840, 843. En verdad, esta aprensión fué compartida por la opinión separada del Juez Frankfurter en el caso de *Bethlehem*, págs. 777 *et seq.* Y aun antes de dicho caso se expresaron dudas en cuanto a la jurisdicción concurrente de Juntas estatales bajo la Ley Wagner. 51 Harv.L.Rev. 722, 735; 33 Ill.L.Rev. 558, 572. *Cf. Algoma P. & V. Co.* v. *Wisconsin Empl. Rel. Bd.*, supra.

lar estaba pendiente en este Tribunal, la Ley Taft–Hartley, 29 U.S.C. Supp. I, secs. 141 *et seq.*, entró en vigor. En esta Ley la sección 10(*a*) de la Ley Wagner fué enmendada para contestar la cuestión que se dejó pendiente en el caso de *Bethlehem*. Ahora provee que el poder de la Junta Nacional para impedir las prácticas ilícitas de trabajo enumeradas en la ley "no será afectado por algún otro medio de resolución o prevención que se haya establecido o pueda establecerse mediante convenio, ley, o en alguna otra forma: Disponiéndose, que la Junta tendrá poder mediante convenio con cualquier agencia de cualquier Estado o Territorio para cederle a dicha agencia jurisdicción sobre cualesquiera casos en cualquier industria (fuera de minas, manufactura, comunicaciones, y transportación excepto cuando su carácter sea predominantemente local) aun cuando tales casos puedan envolver disputas obreras que afecten el comercio, a menos que la disposición del estatuto del Estado o Territorio aplicable a la determinación de tales casos por tal agencia sea inconsistente con la disposición correspondiente de este subtítulo o haya recibido una interpretación inconsistente con él."

Esta disposición se ha interpretado casi uniformemente como que significa que donde un patrono está sujeto a la Ley Taft–Hartley, la jurisdicción de la Junta Nacional en cuanto a prácticas ilícitas de trabajo cubiertas por la Ley Federal es exclusiva, y que una Junta estatal o territorial puede obtener jurisdicción sobre las mismas *solamente si la Junta Nacional cede jurisdicción a tenor con la sección 10(a)*. *Pittsburgh Rys. Co. Substation O. and M. Emp. Case,* 54 A.2d 891 (Pa., 1947); *Gerry of California* v. *Superior Court,* 194 P.2d 689 (Cal., 1948); *United Office and Professional Wkrs.* v. *Smiley.* 77 F.Supp. 659, 668–69 (Pa., 1948); *Food, Tobacco, Agricultural and Allied Wkrs.* v. *Smiley,* 164 F.2d 922 (C.C.A. 3, 1947); *Linde Air Products Co.* v. *Johnson,* 77 F.Supp. 656 (Minn., 1948); *Annotations,* 174 A.L.R. 1051; 173 A.L.R. 1401, 1427; 2 CCH *Labor Law Reporter,* págs. 5930–36, y

casos citados; 1947 *Annual Survey of American Law*, pág. 539; Somers, *Wagner to Taft–Hartley*, IX *Federal Bar Journal* 315, 339; 42 Ill.L.Rev. 500 *et seq.*; Boudin, *Supersedure and the Purgatory Oath under the Taft–Hartley Law*, XXIII N.Y.U.L.Q. 72, 74–76; Boudin, *The Supreme Court and Labor: 1946 Term*, 47 Col.L.Rev. 979, 993–94; Teller, *Labor Disputes and Collective Bargaining*, 1948 *Supp.* secs. 398.24, 398.135–36, págs. 46, 118–19; Ackerman, supra, pág. 366 *et seq.*; 49 Col.L.Rev. 858 (junio 1949); véase *International Brotherhood, etc. v. Riley*, 59 A.2d 476 (N.H., 1948), comentado en 62 Harv.L.Rev. 141. *Cf.* Smith, *The Taft–Hartley Act and State Jurisdiction over Labor Relations*, 46 Mich.L. Rev. 593, 602 *et seq.* En su consecuencia, ninguna Junta local puede oír hoy día tales casos sin una cesión de jurisdicción meramente porque la Junta Nacional no haya asumido jurisdicción y la ley local no esté en conflicto con la Ley Taft–Hartley en cuanto al problema bajo consideración en el caso específico.

En verdad, es difícil ver cómo podría llegarse al resultado contrario. Si el Congreso hubiera tenido por miras dejarle a las Juntas locales jurisdicción concurrente, no habría sido necesario legislar en cuanto a la cesión de jurisdicción. La disposición para esto último tiene necesariamente que significar que excepto cuando sea cedida, la jurisdicción de la Junta Nacional es exclusiva.

Creemos que este criterio ha sido vislumbrado por el último párrafo de la opinión en el caso de *La Crosse*, en 93 L.ed. a la pág. 270; por el *dictum* en *California v. Zook*, 93 L.ed. a las págs. 800–01, al efecto de que "cuando se van a excluir las leyes estatales, tan útiles a los funcionarios federales, el Congreso puede decirlo así, como en la Ley Taft–Hartley, 29 U.S.C.A. sec. 160(*a*) . . . "; y por el lenguaje en el caso de *Algoma*, 93 L.ed. a las págs. 548–49, en cuanto al significado de la sección 10(*a*) de la Ley Taft–Hartley.

██ La disposición de la sección 2(6) de la Ley Wagner de que la Junta Nacional tiene jurisdicción sobre negocios locales que operan enteramente en la Isla de Puerto Rico no fué modificada por la Ley Taft–Hartley. Por consiguiente, en virtud de la sección 2(6) no enmendada y de la nueva versión de la sección 10(a), en ausencia de una cesión de jurisdicción, bajo la Ley Taft–Hartley la Junta Nacional tiene jurisdicción exclusiva en Puerto Rico, aun en cuanto a casos donde no hay conflicto entre nuestra Ley y la Ley Federal, sobre todos los patronos—con excepción de corporaciones gubernativas y aquellos que se dedican a la agricultura—que cometen prácticas ilícitas de trabajo cubiertas por la Ley Federal. Y esto no se afecta por el hecho de que la Junta Nacional no ha ejercitado jurisdicción en el caso específico bajo consideración.[7]

██ En vista de lo anteriormente expuesto, la Junta Insular tiene jurisdicción solamente cuando (1) el patrono comete una práctica ilícita de trabajo o lleva a cabo alguna otra conducta que no está enumerada en la Ley Federal pero incluída en la ley local, *Algoma P. & V. Co.* v. *Wisconsin Empl. Rel. Bd.*, supra, *Junta de Relaciones del Trabajo* v. *N.Y. & P.R. S/S Co.*, ante, pág. 782; (2) el negocio del patrono está exento bajo la Ley Federal pero sujeto a la Ley Insular, v.g., corporaciones gubernativas y aquellos que se dedican a la agricultura, sección 2(2), (11), Ley núm. 6, Leyes de Puerto Rico, 1946 ((1) pág. 19), 59 Harv.L.Rev. 976, 982; (3) la Junta Nacional cede jurisdicción a la Junta Insular de conformidad con las condiciones fijadas en la sección 10(a) de la Ley Taft–Hartley. El presente caso no cae dentro de ninguna de estas tres categorías.[8] Por tanto, si la orden

[7]Si bien no admite que carezca de jurisdicción, el Tercer Informe Anual de la Junta Insular indica a las págs. 5–9 que no trata de aplicar la ley local en casos cubiertos por la Ley Taft–Hartley.

[8]Después de empezar a regir la Ley Taft–Hartley, las Juntas Federal e Insular dieron fin a su convenio, descrito en el escolio 5, a partir del 24 de octubre de 1947. Al mismo tiempo, expidieron una ''declaración de política''

hubiera sido dictada en este caso luego de aprobarse la Ley Taft–Hartley, estaríamos constreñidos a decidir que la Junta Insular no tenía jurisdicción en el caso toda vez que a la Junta Nacional se le confirió jurisdicción exclusiva sobre el mismo.

■ El próximo problema es si es necesario un resultado diferente donde, como ocurre aquí, la orden de la Junta Insular fué dictada pocas semanas antes de la fecha de vigencia de la Ley Taft–Hartley y estaba pendiente ante nos mediante solicitud de revisión cuando ésta entró en vigor. En casos algo parecidos la Corte Suprema ha resuelto que las resoluciones de la Junta Nacional dictadas bajo la Ley Wagner y pendientes ante las Cortes de Apelaciones en solicitud de que se pusieran en vigor, deben ser reconsideradas por estas últimas cortes a la luz de la Ley Taft–Hartley. *N.L.R.B.* v. *The Pittsburgh Steamship Co.*, 337 U.S. 656, resuelto el

que lee en parte como sigue ·(12 Fed.Reg. 7902, reimpreso en 1 CCH *Labor Law Reporter*, págs. 1221–3–22):

"(e) Por el momento actual, bajo la discreción administrativa conferida a la Junta Nacional de Relaciones Obreras y a su Consejero Legal, es la opinión de la Junta y de su Consejero Legal, que el ejercicio de toda la jurisdicción plenaria sobre todos los asuntos que traten de disputas obreras y de representación en el Territorio de Puerto Rico, especialmente aquellas que envuelvan negocios de operación puramente local, no es administrativamente factible ni deseable. Estos negocios están representados por los siguientes ejemplos:

"* * * * * * * *

"Líneas municipales de guaguas y flotas de taxímetros.

"* * * * * * *

"(f) Por tanto procede que la Junta de Relaciones del Trabajo de Puerto Rico actúe a base de esta declaración en relación con todos los casos que surjan en los negocios enumerados arriba o en otros de carácter similar hasta que la Junta Nacional de Relaciones del Trabajo o su Consejero Legal asuman jurisdicción, o hasta que esta declaración sea modificada."

Esta declaración fué expedida después que el presente caso—que envolvía una línea municipal de guaguas—fué resuelto por la Junta Insular. Además, de acuerdo con las págs. 8–9 del Tercer Informe Anual de la Junta Insular, este arreglo ha sido terminado. Lo más importante es que esta acción fué en sustancia un esfuerzo para continuar por lo menos temporalmente, la división del trabajo contemplada por convenios anteriores. Pero no equivalió a una cesión de jurisdicción según lo provee la sección 10(a) de la Ley Taft–Hartley y por tanto no le podemos otorgar efecto legal en este caso.

20 de junio de 1949; *Budd Manufacturing Co.* v. *N.L.R.B.,* 332 U.S. 840.

Este problema ha surgido más frecuentemente en relación con uniones de supervisores. Bajo la Ley Wagner los patronos venían obligados a negociar con uniones de supervisores. *Packard Co.* v. *Labor Board,* 330 U.S. 485. Las secciones 2(3) y 14(*a*) de la Ley Taft–Hartley relevan a los patronos de esta obligación. Al reconsiderar órdenes de la Junta Nacional dictadas en tales casos bajo la Ley Wagner y pendientes de revisión cuando entró a regir la Ley Taft–Hartley, las Cortes de Apelaciones y la Junta Nacional han resuelto que estas resoluciones eran válidas aun después de empezar a regir la Ley Taft–Hartley, en tanto en cuanto dichas resoluciones eran reparadoras; es decir, en lo que se refiere a ordenar la reposición y paga atrasada por el despido discriminatorio de supervisores que se dedicaron a actividades unionales. Pero aquellas partes de dichas resoluciones que exigían a los patronos negociar con uniones de supervisores son consideradas como que operan para el futuro y han sido dejadas sin efecto por el fundamento de que un patrono no puede ya ser obligado a efectuar tales negociaciones en vista de las disposiciones en contrario de la Ley Taft–Hartley. *N,L.R.B.* v. *Edward G. Budd Mfg. Co.,* 169 F.2d 571 (C.C.A. 6, 1948); *N.L.R.B.* v. *Wyandotte Transportation Company,* 166 F.2d. 434 (C.C.A. 6, 1948); *N.L.R.B.* v. *E. C. Atkins & Co.,* 165 F.2d 659 (C.C.A. 7, 1947); *Eastern Coal Corp.* v. *N.L.R.B.,* 176 F.2d 131 (C.C.A. 4, 1949) 18 L.W. 2009; *L. A. Young Spring & Wire Corp.* v. *N.L.R.B.,* 163 F.2d 905 (D.C., 1947); *Eastern Gas & Fuel Associates* v. *N.L.R.B.,* 162 F.2d 864 (C.C.A. 6, 1947); *N.L.R.B.* v. *Sandy Hill Iron & Brass Works,* 165 F.2d 660 (C.C.A. 2, 1947); *In the Matter of Briggs Manufacturing Company,* 75 N.L.R.B. 569; *In the Matter of Marshall and Bruce Company,* 75 N.L.R.B. 90; *In the Matter of Westinghouse Electric Corporation,* 75 N.L.R.B. 1; 2 C.C.H. *Labor Law Re-*

*porter,* pág. 6244; 1947 *Annual Survey of American Law,* págs. 509–12. *Cf. N.L.R.B.* v. *Gate City Cotton Mills,* 167 F.2d 647 (C.C.A. 5, 1948).

Huelga determinar si los casos que pusieron en vigor resoluciones bajo la Ley Wagner en cuanto a reposición y paga atrasada en casos de supervisores aun luego de la fecha en que entró a regir la Ley Taft–Hartley, serían de aplicación aquí. La orden que revisamos no contiene tales disposiciones reparadoras; únicamente ordena el procedimiento de negociación colectiva para el futuro. Y, como hemos visto, tanto la Junta como las cortes se han negado a poner en vigor esa clase de resolución, dictada bajo la Ley Wagner, si las disposiciones posteriores de la Ley Taft–Hartley no lo exigen así.

Existe un motivo adicional y más decisivo por qué no podemos poner en vigor la orden de la Junta Insular en este caso. En los anteriores casos Federales no había cuestión alguna de falta de jurisdicción. La Junta Nacional y las Cortes de Apelaciones continuaron poniendo en vigor la Ley Taft–Hartley igual que lo habían hecho con la Ley Wagner; los únicos cambios habidos lo fueron en las reglas sustantivas que ponían en vigor. Pero el cambio operado por la sección 10(*a*) de la Ley Taft–Hartley fué más drástico para las Juntas estatales y la Insular: definitivamente las privó de la jurisdicción concurrente que presumieron tener bajo la Ley Wagner.

La decisión y orden de la Junta en este caso no era firme antes de la fecha en que entró en vigor la Ley Taft–Hartley. Por el contrario, dentro del término prescrito por ley, la compañía nos solicitó la revisión de dicha orden. Mientras estaba pendiente el caso ante este Tribunal, empezó a regir la Ley Taft–Hartley. En su consecuencia, aun asumiendo, como hemos hecho, que bajo la Ley Wagner la Junta Insular y este Tribunal tenían jurisdicción hasta dicha fecha, el Congreso le quitó tanto a la Junta como a este Tribunal, tal

jurisdicción en todos los casos que estuvieran pendientes en virtud de la sección 10(*a*) de la Ley Taft–Hartley. Véanse *Suárez* v. *Tugwell, Gobernador,* 67 D.P.R. 180, 184–5, y casos citados; *Metropolitan Life Ins. Co.* v. *Wisconsin Labor Relations Board,* 297 N.W. 430 (Wis., 1941). *Cf. Puerto Rico Ilustrado* v. *Buscaglia, Tes.,* 64 D.P.R. 914, 954–57. En consecuencia carecemos de poder para poner en vigor dicha orden.(⁹)

Como hemos visto, bajo la Ley Wagner la Junta Nacional decidió no ejercitar su jurisdicción en algunos casos por razones económicas o porque el patrono estaba dedicado a un negocio predominantemente local. Pero la Junta Nacional tiene ahora jurisdicción plenaria y exclusiva en Puerto Rico. Y la cesión de jurisdicción por la Junta Nacional a la Junta Insular bajo la sección 10(*a*) de la Ley Taft–Hartley. quizás no puede ser posible debido a diferencias en las dos leyes, ni factible tampoco. Véanse Tercer Informe Anual de la Junta Insular, págs. 5–9; Ackerman, supra, pág. 367. Por consiguiente, en ausencia de tal cesión de jurisdicción, las relaciones obreras de algunos de nuestros negocios esencialmente locales, no tendrán reglamentación si la Junta Nacional continúa la política de rehusar jurisdicción en ciertos casos. Pero el remedio para dicha situación, de necesitarse alguno, sólo puede venir del Congreso.(¹⁰)

(⁹)Véase *Natelson Bros.* v. *New York Board,* 23 L.R.M. 2524 (N.Y., 1 de abril de 1949) para una decisión contraria de una corte inferior de Nueva York. *Cf.* Rothenberg *on Labor Relations,* págs. 306–8.

(¹⁰)El siguiente comentario se encuentra en 61 Harv.L.Rev. 840, 850: "A la luz de recientes acontecimientos, el futuro de la reglamentación obrera estatal en los negocios que afecten el comercio es opaco. Si, como parece probable, se resuelve que la Ley Federal ocupa todo el campo, y se encuentra que no es práctico una delegación en grande escala, aquellos negocios sobre los cuales la JNRT no pueda ejercitar su jurisdicción, quedarán mayormente sin reglamentación, y será imposible la cooperación entre las juntas estatales y la federal. Es concebible, si bien no probable, que las cortes encontrarán una solución sin la ayuda del Congreso. Si no lo hacen, entonces debiera enmendarse la Ley Taft–Hartley, permitiendo el control estatal donde el negocio de otra forma quedaría sin reglamentación alguna, y eliminando las restricciones que la sección 10(*a*) impone al poder de la JNRT para delegar."

*La decisión y orden de la Junta Insular será dejada sin efecto y el caso devuelto con instrucciones de desestimar la querella por falta de jurisdicción.*

El Juez Asociado Señor Negrón Fernández se inhibió.