Antonio Quiñones Bird, como Presidente del Sindicato de Empleados de Comunicaciones de Puerto Rico, y el Sindicato de Empleados de Comunicaciones de Puerto Rico, recurrentes, *v.* La Junta de Relaciones del Trabajo de Puerto Rico, recurrida.

Núm. 10.—*Sometido:* Febrero 1, 1949. *Resuelto:* Febrero 24, 1949.

594

*Víctor Gutiérrez Franqui,* abogado de los recurrentes; *Hon. Procurador General Vicente Géigel Polanco (Luis Negrón Fernández, Ex Procurador General,* en el alegato), *A. Torres Braschi, Procurador General Auxiliar* y *Yamil Galib Frangie, Procurador General Auxiliar Especial,* abogados de la Junta de Relaciones del Trabajo, recurrida.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La Junta de Relaciones del Trabajo de Puerto Rico expidió una querella dirigida a la Autoridad de Comunicaciones alegando, entre otras cosas, que la Autoridad había cometido ciertas prácticas ilícitas de trabajo, consistentes en haber dominado e intervenido con una unión obrera, el Sindicato de Empleados de Comunicaciones de Puerto Rico, prestándole ayuda económica y de otra clase, todo ello en violación del artículo 8(1)(a)(b)(c) de la Ley de Relaciones del Trabajo de Puerto Rico.(¹) La querella se expidió como resultado de ciertos cargos radicados ante la Junta por un empleado de la Autoridad que actuaba a nombre del Comité de Defensa de la Cohesión de los Miem-

---

(¹)Estas disposiciones se encuentran en la Ley núm. 6, Leyes de Puerto Rico, 1946 ((1) pág. 19), quo rezan así:

"Artículo 8.—*Qué son Prácticas Ilícitas de Trabajo.*—(1) Sería práctica ilícita de trabajo el que un patrono, actuando individualmente o concertadamente con otros:

"(a) Intervenga, restrinja, ejerza coerción o intente intervenir, restringir o ejercer coerción con sus empleados en el ejercicio de los derechos garantizados por el Artículo 4 de esta Ley.

"(b) Inicie, constituya, establezca, domine, intervenga o intente iniciar, constituir, establecer, dominar o intervenir con la formación o administración de cualquier organización obrera, o contribuya a la misma con ayuda económica o de otra clase; *Disponiéndose,* que no se prohibirá a un patrono deducir suma alguna de dinero del salario, ganancias o ingresos de un empleado para el pago de cuotas a una organización obrera cuando tal deducción sea requerida en

bros del Sindicato de Comunicaciones de Puerto Rico. La Junta notificó a la Autoridad, al Sindicato y al Comité enviándoles copias de la querella y de los avisos de audiencia.

El Sindicato radicó una moción solicitando se le permitiera intervenir en el caso. La Junta emitió una resolución manifestando que "habiendo sido dicha organización obrera mencionada en la querella expedida y notificada de la misma, así como también de los avisos de audiencia expedidos en este caso, ha adquirido 'status' de parte con interés en el procedimiento, sin que para tener derecho a intervenir tuviese que radicar Moción de Intervención alguna." Indicaba la orden que la participación del Sindicato "queda limitada, sin embargo, a alegar y a probar lo que estime pertinente en relación con las alegaciones de la querella, que de ser probadas podrían servir de base a una decisión y orden de la Junta que afectase directa o indirectamente los derechos del Sindicato."

La audiencia sobre la querella se comenzó ante un Examinador de la Junta, pero fué pospuesta con el fin de darle a las partes una oportunidad de ponerse de acuerdo. La Autoridad, el Comité y el abogado de la Junta radicaron una estipulación que se presentó en evidencia, con la objeción del Sindicato. El Examinador sometió el caso a la Junta,

---

virtud de los términos de un convenio colectivo celebrado entre el patrono y una organización obrera no establecida, mantenida o ayudada por acción alguna definida en esta Ley como práctica ilícita de trabajo, si dicha organización obrera es el representante de una mayoría de sus empleados según lo provisto por el Artículo 5(1) de esta Ley en una unidad apropiada cubierta por tal convenio.

"(c) Estimule, desaliente o intente estimular o desalentar la matrícula de cualquier organización obrera mediante discriminación al emplear, despedir o en relación con la tenencia de empleo u otros términos o condiciones de empleo, incluyendo un paro patronal; Disponiéndose, que nada de lo aquí contenido prohibe a un patrono hacer un convenio de afiliación total o de mantenimiento de matrícula con cualquier organización obrera no establecida, mantenida o ayudada por acción alguna definida en esta Ley como práctica ilícita de trabajo, si dicha organización obrera representa una mayoría de los empleados en una unidad apropiada con facultad para la contratación colectiva."

dictando ésta una Decisión y Orden dirigida a la Autoridad conteniendo el mismo lenguaje de la estipulación.

El Sindicato radicó esta petición para que se revisara la orden de la Junta. El único error señalado es la actuación de la Junta al dictar una orden a base de una estipulación que el Sindicato no firmó.

En un procedimiento de esta naturaleza una unión patronal no es parte indispensable. "Toda vez que la orden no estaba dirigida a la Asociación [la unión patronal] ésta no tenía derecho a notificación y audiencia. Su presencia no era necesaria con el fin de que la Junta pudiera determinar si los querellados [el patrono] habían infringido la ley o pudiera dictar la correspondiente orden contra ellos." *Labor Bd.* v. *Greyhound Lines,* 303 U.S. 261, 271; *Solvay Process Co.* v. *National Labor Relations Board,* 117 F.2d. 83 (C.C.A. 5, 1941).

En el caso de *Nat. Licorice Co.* v. *Labor Board,* 309 U.S. 350, 362–5, la Corte Suprema ha indicado por qué la unión patronal no es una parte indispensable en tal procedimiento, así:

"El procedimiento autorizado a llevarse a cabo por la Junta bajo la Ley Nacional de Relaciones del Trabajo no es uno para adjudicar derechos privados. . . . Tiene pocos indicios de un pleito privado y no exige la comparecencia de cualquier parte privada que no sea la del patrono a quien se le imputan prácticas ilícitas de trabajo. La Junta actúa en una capacidad pública para darle efecto a la política pública declarada en la Ley . . .

"En un procedimiento tan estrechamente restringido a la protección y ejecución de derechos públicos, no hay lugar o necesidad de seguir las reglas tradicionales que gobiernan la inclusión de partes en pleitos que determinan derechos privados. De ordinario, cuando los derechos envueltos en un pleito surgen de un contrato, las cortes rehusan adjudicar los derechos de algunas de las partes en el contrato, si las otras no han comparecido. . . .

". . . . . . . . .

"Aquí el derecho que reclama la Junta no es uno que surge o se deriva de contratos entre el peticionario y sus empleados. La Junta reclama un derecho público conferídole en su calidad de enti-

dad pública, a quien el interés público impone el deber de evitar prácticas ilícitas del trabajo. El derecho público y el deber de la Junta se extienden no solamente a evitar prácticas ilícitas del trabajo por parte del patrono en el futuro, si que también a evitar que él disfrute de cualquier ventaja adquirida mediante la infracción de la Ley, ya sea ésta una unión patronal o un contrato ilegal con los empleados, que se emplean para frustrar la política y el propósito del estatuto. Es obvio que los patronos no pueden eludir la Ley Nacional de Relaciones del Trabajo induciendo a sus obreros a comprometerse a no exigir el cumplimiento de los deberes que la ley les impone . . .

"La orden de la Junta está dirigida únicamente a la peticionaria. . . .

"El efecto de la orden de la Junta, según lo interpretamos, es impedirle a la peticionaria aprovecharse de cualquier beneficio de contratos obtenidos mediante la violación de la ley y que en sí son medios continuos de infringirla, e impedirle además llevar a cabo las disposiciones del contrato, el efecto de las cuales sería violentar los derechos garantizados por la Ley Nacional de Relaciones del Trabajo. No impide a los obreros tomar cualquier acción para asegurar la adjudicación en cuanto a los contratos, ni prejuzga sus derechos en caso de tal adjudicación. Ahora no consideramos su naturaleza y alcance. Basta decir que ningún tribunal tiene poder para obligar al patrono a dar los pasos que, aun cuando se hubiera comprometido por el contrato a darlos, infringirían la resolución de la Junta o serían inconsistentes con alguna parte de la misma. La Sección 10(a) y (c) de la Ley confiere a la Junta el poder exclusivo de decidir si las prácticas ilícitas de trabajo han sido realizadas y determinar los pasos que debe dar el patrono para eliminar o evitar las consecuencias de esta práctica ilícita de trabajo."

La Corte Suprema repitió este punto de vista en el caso de *Pittsburgh Glass Co.* v. *Board*, 313 U.S. 146, donde dijo que la orden de la Junta (pág. 155) ". . . deja sin efecto el reconocimiento de la Unión por parte del patrono como 'una organización obrera' que representa a los trabajadores. Toda vez que la orden no va dirigida contra la Unión, su presencia era innecesaria. Luego de tal orden el patrono no puede ser obligado por otra agencia del gobierno a realizar actos inconsistentes con dicha orden. Si bien deja intactos los derechos privados de la Unión, esta orden pro-

598

hibe negociaciones futuras por parte de la Compañía con la Unión como representante obrera de los trabajadores. *National Licorice Co.* v. *Labor Board,* 309 U.S. 350, 366."(²)

Por consiguiente la Junta pudo haber procedido contra la Autoridad sin necesidad de incluir como parte al Sindicato. Sin embargo, aun cuando no venía obligada a ello, incluyó al Sindicato como parte para un fin limitado: sería oído en tanto en cuanto sus derechos quedaran afectados. En su consecuencia, la única cuestión ante nos es si la orden de la Junta afecta los derechos del Sindicato.

El único caso citado por éste en apoyo de su posición es el de *In the Matter of Joliet Wrought Washer Company,* 15 N.L.R.B. 1096. Pero todo lo que ese caso resuelve es que la Junta limitará su orden a ciertas disposiciones basadas en una estipulación similar que no envuelvan derechos de la alegada unión patronal. Sin embargo, el alegato del Sindicato no señala derechos del Sindicato que se alegue hayan sido afectados por la orden de la Junta en el presente caso. Sólo dice que "se negó a firmar la estipulación por entender que perjudicaba sus derechos, particularmente el párrafo VII, apartados 1(*a*) a 1(*e*), inclusive." Cuando examinamos estas disposiciones del párrafo VII,(³)

---

(²)Para una situación diferente, *cf. Edison Co.* v. *Labor Board,* 305 U.S. 197, 233.

(³)Fueron incluídas en la orden como

"1.—Cesar y desistir de:

"(*a*) Permitir que el Sindicato de Empleados de Comunicaciones de Puerto Rico o cualquier otra organización obrera y/o sus miembros, utilicen sus líneas telegráficas, telefónicas y servicio de radio-comunicación, para enviar, libre de pago, mensajes relacionados con actividades unionales o de otra índole.

"(*b*) Autorizar a cualquiera de sus empleados a dedicarse a actividades relacionadas con el Sindicato de Empleados de Comunicaciones de Puerto Rico, o con cualquiera otra organización obrera durante sus horas regulares de trabajo y/o en los lugares de trabajo o propiedades de la Querellada.

"(*c*) Conceder remuneración de clase alguna por servicios no prestados a cualquier empleado y por razón de ser dicho empleado presidente, director o miembro del Sindicato, o de cualquier otra organización obrera, así como también a cualquier familiar de dicho presidente, director o miembro.

"(*d*) Comprar espacio para anuncios en el periódico 'Comunicaciones' editado por el Sindicato de Empleados de Comunicaciones de Puerto Rico o en

encontramos que sólo aplican la ley existente. Cada acto prohibido en dichos apartados está a su vez prohibido por nuestra propia ley.(⁴) Desde luego el Sindicato no puede tener derechos que estén en conflicto con las políticas públicas establecidas en la Ley de Relaciones del Trabajo. No podemos ver de que modo la reexposición de algunas disposiciones de la ley en una orden de la Junta dirigida únicamente al patrono, afecte los derechos del Sindicato.

*La solicitud del Sindicato para que se revise la Decisión y Orden de la Junta será desestimada.*

El Juez Asociado Sr. Negrón Fernández no intervino.

cualquier otro periódico editado por cualquier organización obrera de sus empleados, pero principalmente para información de dichos empleados.

"(*e*) Reducir o de otro modo reajustar las horas de trabajo de sus empleados para facilitarles su participación en actividades del Sindicato de Empleados de Comunicaciones o de cualquier otra organización obrera, exceptuándose aquellos casos en que así se ordene o solicite por la Junta de Relaciones del Trabajo de Puerto Rico o cualquier funcionario de la misma, debidamente autorizado para ello."

(⁴)Véanse *Labor Board* v. *Bradford Dyeing Assn.,* 310 U.S. 318; *National Labor Relations Bd.* v. *Moore-Lowry F. M. Co.,* 122 F.2d 419; *National Labor Relations Board* v. *Reynolds Wire Co.,* 121 F.2d 627; *In the Matter of Newport News Shipbuilding and Dry Dock Co.,* 48 N.L.R.B. 312; *In the Matter of Titan Metal Manufacturing Company and Federal Labor Union No. 19981,* 5 N.L.R.B. 577; *In the Matter of Laird, Schaber Company, Incorporated,* 14 N.L.R.B. 1152; *In the Matter of Iowa Packing Company et al.,* 11 N.L.R.B. 986; *In the Matter of Servel, Inc., et al.,* 11 N.L.R.B. 1295; *In the Matter of Diamond T Motor Company,* 18 N.L.R.B. 204; *In the Matter of Shell Oil Company of California et al.,* 2 N.L.R.B. 835; *National Labor Relations Board* v. *Baltimore T. Co.,* 140 F.2d 51; *National Labor Rel. Board* v. *Germain Seed & Plant Co.,* 134 F.2d 94.