ASOCIACIÓN INSULAR DE GUARDIANES DE PUERTO RICO, ET AL., demandantes y apeladas, *v.* BULL INSULAR LINE, INC., ET AL, demandados y apelantes.

Número 10876.

*Sometido:* 3 de junio de 1954.   *Resuelto:* 30 de septiembre de 1955.

*Charles R. Hartzell, Rafael O. Fernández, José L. Novas y Vicente M. Ydrach,* abogados de los apelantes; *Víctor M. Bosch,* abogado de las apeladas; *Hon. Secretario de Justicia José Trías Monge, Aurelio Torres Braschi, Secretario Auxiliar,*

*Ramón Acevedo Oliveras* y *Eduardo Álvarez de la Vega,* abogados de la Junta de Relaciones del Trabajo, ésta como *amicus curiae.*

PER CURIAM: La cláusula XIII del Convenio Colectivo suscrito por la Asociación Insular de Guardianes de Puerto Rico y la Puerto Rico Steamship Association, en representación de la Bull Insular Line, Inc., y de otras compañías navieras, con fecha 25 de octubre de 1950, textualmente copiada reza así:

## "ARTICULO XIII — *QUEJAS Y AGRAVIOS*

"A.—La Asociación se compromete a no suspender el trabajo como consecuencia de cualquier incidente, disputa, controversia o reclamación durante la vida de este convenio.

"B.—En caso de algún incidente, disputa, o controversia o reclamación o cualquier controversia sobre la interpretación de este convenio, la Asociación a través de su Presidente o Sec.-Tesorero o cualquier oficial u oficiales, debidamente autorizados por los dos primeros, someterá inmediatamente el asunto en controversia a un representante autorizado de la compañía. En caso de que el asunto no sea resuelto satisfactoriamente dentro de las 24 horas después de haberse sometido por la Asociación a la Compañía, el mismo deberá ser sometido dentro de las siguientes 24 horas por cualquiera de las partes a un Comité de Arbitraje que por la presente se crea, compuesto de cinco (5) miembros, dos representando a la Unión y dos representando a la Compañía, que no sean abogados. El quinto miembro será nombrado de mutuo acuerdo por los representantes de la Asociación y la Compañía. En caso de que las partes no se pongan de acuerdo, el quinto miembro será uno de los árbitros oficiales del Departamento del Trabajo Insular o el que nombre el Honorable Comisionado del Trabajo Insular de Puerto Rico.

"C.—Dicho Comité de Arbitraje dará a la Asociación y a la Compañía la oportunidad de exponer sus respectivos puntos de vista, siendo el veredicto que rinda dicho Comité final y obligatorio para ambas partes. El Comité se reunirá y rendirá su veredicto por escrito dentro del término de diez (10) días a partir de la fecha en que se le sometió para su decisión el incidente, disputa, controversia o reclamación; a menos que las partes decidan extender este término."

Dos de sus guardianes fueron despedidos por la Compañía y la cuestión del despido fué sometida a un Comité de Arbitraje. En 12 de julio de 1952 los dos representantes de la Asociación en el comité y los dos de la Compañía, en unión al quinto miembro designado por el Comisionado del Trabajo, se reunieron para considerar y resolver si el despido de dichos obreros había estado o no justificado. En la citada reunión los representantes de la Compañía y el quinto miembro requirieron a los representantes de la Asociación para que con ellos firmaran un "acuerdo de sumisión" como requisito previo para que el comité pudiera arbitrar las querellas presentadas por dichos obreros. Los miembros del comité que representaban a la Asociación se negaron a avenirse al requerimiento hécholes, razón por la cual el comité en pleno se negó a arbitrar, declarando que "no hay caso de arbitraje sencillamente porque no se ha podido instrumentar el mismo" mediante la firma por ambas partes de un acuerdo de sumisión y "debido a que las partes no se pusieron de acuerdo respecto a la jurisdicción que debían concederle al Comité de Arbitraje con su quinto miembro." En vista de ello y acogiéndose a lo dispuesto por la "Ley Uniforme de Sentencias Declaratorias" (núm. 47 de 1931) la Asociación y los dos obreros despedidos instaron demanda contra la Bull Insular Line, contra los dos representantes de ésta y contra el quinto miembro del Comité.

A la anterior demanda la Compañía y sus dos representantes interpusieron moción para desestimar por falta de jurisdicción y de hechos determinantes de una causa de acción. Celebrada una conferencia con antelación al juicio las partes estipularon que el quinto miembro debía ser eliminado como parte demandada, así como que:

"(1) Los demandantes sostienen que no hay necesidad de un acuerdo de sumisión, porque por la naturaleza de la forma en que está definido y constituído el Comité de Arbitraje en el Convenio Colectivo, [éste] adquiere jurisdicción sobre todas las quejas o controversias que surjan entre la compañía y los demandantes; y

"(2) . . . Que la contención de los demandados es que el tribunal carece de jurisdicción, y aun en el supuesto de que el tribunal tuviera jurisdicción para resolver, la posición de ellos es distinta, o sea, que la contención de la compañía deman- dada es en el sentido de que el comité de arbitraje a que se refiere el artículo 13 del convenio colectivo se limita a aquellas quejas y agravios que le sean sometidas por un acuerdo de sumisión de las partes."

También presentaron por estipulación el convenio colectivo a que antes se ha aludido. El tribunal dictó sentencia decla- rándose con jurisdicción para conocer del caso que ante sí tenía y concluyendo en definitiva que "a tenor del artículo XIII del Convenio Colectivo antes referido, y por razón de la forma en que está redactado dicho artículo y definido y cons- tituído el Comité de Arbitraje que en él se crea, no es obliga- ción de las partes firmar separadamente un acuerdo de sumi- sión como medio de instrumentar la controversia y de fijarle jurisdicción a los árbitros, por lo que procede declarar con lugar el recurso interpuesto."

El único error señalado por los demandados en ape- lación es que "el tribunal inferior erró al declararse con ju- risdicción para conocer del recurso de sentencia declaratoria radicado por los demandantes, ya que los hechos alegados indi- can prácticas ilícitas de trabajo cuya investigación y adjudi- cación es de la jurisdicción exclusiva de la Junta Insular de Relaciones del Trabajo."

Al resolver que era competente para conocer del caso que ante su consideración tenía el tribunal sentenciador en una extensa y bien razonada "Sentencia Declaratoria" se expresa del modo siguiente:

"La contención de los demandados de que este tribunal no tiene jurisdicción para conocer de este recurso por ser los hechos alegados por la Asociación de Guardianes constitutivos a lo sumo de prácticas ilícitas de trabajo, cuya investigación y adjudicación es de la jurisdicción exclusiva de la Junta Nacional de Relaciones del Trabajo o de la Junta Insular de

Relaciones del Trabajo, carece de méritos y debe ser rechazada por el tribunal.

".         .         .         .         .         .         .         .

"Estando la Bull Insular Line sujeta a la Ley Taft-Hartley, la sec. 10 (a) de dicha ley confiere a la Junta Nacional de Relaciones del Trabajo jurisdicción exclusiva si la compañía comete cualquiera de las prácticas ilícitas enumeradas en la sec. 8. Pero el haber enumerado la Ley Wagner y la Ley Taft-Hartley las prácticas ilícitas de trabajo sobre las cuales tiene jurisdicción exclusiva la Junta Nacional de Relaciones del Trabajo, no priva a los estados de poner en vigor sus propias políticas en cuestiones no comprendidas en la ley federal . . . . *Junta Relaciones del Trabajo* v. *N. Y. & P.R. S/S Co.,* supra.

"El caso de autos es un procedimiento para interpretar la cláusula de arbitraje en un convenio colectivo a los fines de su cumplimiento. La infracción de un convenio colectivo constituye una práctica ilícita de trabajo bajo el art. 8 (1) (f) de la Ley insular; pero eso no es así bajo la Ley federal. Ni la Ley Nacional de Relaciones del Trabajo corrientemente conocida como la Ley Wagner, ni la Ley Taft-Hartley, proveen que será práctica ilícita de trabajo el que haya divergencias en la aplicación de un convenio colectivo y se dé lugar a que se interprete judicialmente a los fines de su cumplimiento. Dichas leyes tratan principalmente de crear condiciones que permitan a las partes llegar a un acuerdo y nada tienen que ver con el cumplimiento de convenios propiamente dichos. Toda vez que la Ley Taft-Hartley no dice que será práctica ilícita de trabajo el que haya divergencias en la aplicación de un convenio colectivo y se dé lugar a que se interprete judicialmente a los fines de su cumplimiento, no existe conflicto entre ella y el art. 8(1)(f) de la ley insular y por consiguiente dicho artículo puede ponerse en vigor aun contra un patrono que esté sujeto a la Ley Taft-Hartley, no obstante las disposiciones del art. 10(a) de esta última ley. *Junta Relaciones del Trabajo* v. *N.Y. & P.R. S/S Co.,* supra.

"Existe otro motivo para rechazar la contención de que el tribunal carece de jurisdicción para conocer de este caso. Aun cuando el Congreso hubiera prohibido a las juntas estatales corregir prácticas ilícitas de trabajo no comprendidas en la ley federal, todavía tendría jurisdicción el tribunal sobre este caso en particular. Esto es así porque, contrario a la supo-

sición que hicimos *argüendo* al discutir el primer motivo, éste no es un procedimiento bajo la ley insular para corregir una práctica ilícita de trabajo. Más bien es simplemente un pleito privado ante un tribunal local para obtener la interpretación de un contrato a los fines de su cumplimiento. Y no fué la intención del Congreso despojar a los tribunales locales de su jurisdicción en tales casos. *Junta Relaciones del Trabajo* v. *N.Y. & P. R. S/S Co.,* supra.

"De nuestra ley y de la naturaleza de este caso surge claramente que éste es un procedimiento para hacer valer derechos privados y no para corregir una práctica ilícita de trabajo. El art. 8(1) de nuestra ley enumera las prácticas ilícitas de trabajo que un patrono puede cometer y nada hay en ella que impida esta acción como pleito privado. Un empleado o una unión que lo represente puede demandar a un patrono ante los tribunales para obligarlo a cumplir con las disposiciones de un convenio colectivo. *Junta Relaciones del Trabajo* v. *N. Y. & P. R. S/S Co.,* supra. Este caso cae dentro de esa doctrina toda vez que es un pleito entablado por una unión, por sí y a nombre de dos de sus miembros, con miras a obtener la interpretación de una disposición de un convenio colectivo a los fines de su cumplimiento por las partes contratantes.

"Tampoco hay nada en la ley federal que prohiba este pleito privado. Aun cuando, contrario al presente caso, los hechos demostraran una práctica ilícita de trabajo bajo la ley federal, la jurisdicción exclusiva de la Junta para proteger el derecho público en tal caso no impide necesariamente un pleito en los tribunales locales por un empleado para proteger sus derechos privados. Esta regla se aplica aun con más fuerza cuando la parte demandante, como ocurre en el presente caso, radica un pleito de la naturaleza del de autos, con el propósito de obtener la interpretación de un convenio colectivo que tiene el arbitraje obligatorio como el paso final para decidir quejas y disputas que surjan del convenio.

"En vista de lo anterior resolvemos que no ha lugar a la contención de las demandadas al efecto de que el tribunal carece de jurisdicción en este caso, . . . ."

Conforme indica la cita que del caso de *N. Y. & P. R. S/S Co.* hicimos más arriba, el presente no es un recurso en el cual la única controversia gira en torno de si el patrono ha in-

currido o no en una práctica ilícita de trabajo. De tratarse de este último caso solamente estaría envuelto un derecho público y nuestra Junta de Relaciones del Trabajo tendría jurisdicción exclusiva. *Quiñones* v. *Junta Relaciones del Trabajo*, 69 D.P.R. 593, y casos en él citados. La única cuestión aquí envuelta son los derechos privados de los empleados bajo el convenio colectivo. Y, según indicamos en el caso de la *N. Y. & P. R. S/S Co.* a las págs. 791–96, especialmente en el escolio 4, la jurisdicción exclusiva de la Junta para proteger el derecho *público* no impide necesariamente que los empleados inicien pleitos en los tribunales con el fin de proteger sus intereses *privados* cuando, como aquí ocurre, ellos sostienen que fueron despedidos sin justificación alguna. Si la Junta hubiera actuado en este caso para hacer cumplir el derecho público, nos hallaríamos ante una cuestión distinta respecto a si el presente litigio era improcedente por intervenir con el procedimiento que estaba ante la Junta. Mas en ausencia de un procedimiento pendiente ante la Junta, este pleito privado para hacer cumplir un derecho privado contra un supuesto despido injustificado no resulta distinto a un pleito privado en reclamación de salarios bajo un convenio colectivo. No creemos que la Asamblea Legislativa tuvo el propósito de impedir tales pleitos privados cuando como en el presente la Junta no ha tomado acción alguna en conexión con el derecho público envuelto. *Cf. Junta Rel. del Trabajo* v. *I.L.A.*, 73 D.P.R. 616; *Asoc. Empl. Bayamón Transit* v. *Junta Rel. Trabajo*, 70 D.P.R. 292.

Casos como el de *California Ass'n* v. *Building and Constr. Tr. Council*, 178 F.2d 175 (C.A. 9, 1949) y *Jacobs* v. *Clearing Machine Corp.*, 108 N.E.2d 284, no son de aplicación, ya que envuelven esfuerzos por obtener de los tribunales sentencias declaratorias respecto a la facultad de la Junta de Relaciones del Trabajo para poner en vigor derechos públicos. Convenimos que bajo esas circunstancias el remedio exclusivo bajo la sec. 7(a) de nuestra ley residiría en la Junta. *Myers* v. *Bethlehem Corp.*, 303 U. S. 41; Davis, *Administrative Law*,

págs. 664 et seq. Pero, por los motivos ya indicados, el presente caso es distinguible.

■■ En realidad la única cuestión envuelta en este caso es si habiendo la Asociación y la Compañía designado sus representantes en un Comité de Arbitraje, al igual que lo fué el quinto miembro del mismo, y habiendo divergencia de criterio entre ellos como miembros del comité respecto a si era necesario o no que se les sometiera un "convenio de sumisión," tal divergencia podía llevarse, bajo la Ley de 1931 ya citada, ante el antiguo Tribunal de Distrito de Puerto Rico y de poder así hacerse si dicho tribunal tenía potestad para conocer del recurso.

Según la sec. 2 de la ameritada Ley núm. 47 de 1931:

"Toda persona interesada en una escritura, testamento, contrato escrito, u otros documentos constitutivos de contrato, o cuyos derechos, estado u otras relaciones jurídicas fuesen afectados por un estatuto, ordenanza municipal, contrato o franquicia, podrá obtener la determinación de cualquier divergencia acerca de la interpretación o validez de dichos estatutos, ordenanzas, contrato o franquicia, y además que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven."

La autoridad para conocer de las demandas que se instruyan bajo dicha ley fué conferida por disposición expresa de la misma a las antiguas cortes de distrito.(¹) Sec. 1 de la Ley 47 de 1931, supra. El convenio colectivo suscrito por la Asociación demandante y la Compañía demandada era un contrato. 21 Labor Cases (1952), sec. 66,859; Updegraff and McCoy, *Arbitration of Labor Disputes*, pág. 43; 64 Harv. L. Rev. 1338, 1339. Fué a tenor de una de las cláusulas de ese contrato que ellas sometieron el asunto del despido de los dos empleados a un comité de arbitraje. Existiendo disparidad de criterio entre los miembros del comité respecto a las relaciones jurídicas derivadas de una de las cláusulas del conve-

(¹) Hoy en día esa autoridad la tiene el Tribunal Superior. Véase la sec. 13 de la Ley núm. 11 de 24 de julio de 1952, pág. 31.

nio, ellos tenían derecho a acudir al tribunal competente para que se dirimiera la controversia. Tal tribunal no era otro que el antiguo de distrito. En su consecuencia, el tribunal sentenciador se ajustó a derecho al conocer del recurso.

*Debe confirmarse la sentencia apelada.*