PUERTO RICO TELEPHONE COMPANY, peticionaria, *v.* JUNTA DE RELACIONES DEL TRABAJO ET AL., recurridos.

*Número:* 74     *Resuelto:* 5 de noviembre de 1962

384

*Sifre, Ruiz-Suria & Sifre,* abogados de la peticionaria; *J. B. Fernández Badillo, Procurador General, José Orlando Grau* y *Rafael Buscaglia, Hijo,* abogados de la Junta.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Hace apenas una década que en *Junta Rel. del Trabajo* v. *I.L.A.,* 73 D.P.R. 616, 628–645 (1952), afirmamos la facultad de la Asamblea Legislativa de Puerto Rico para, en el ejercicio de su poder de policía, reglamentar la violación de un convenio colectivo como una práctica ilícita de trabajo. Al efecto, indicamos que la exclusividad de jurisdicción reconocida a la Junta Federal de Relaciones del Trabajo está limitada, por los propios términos de la ley sobre la materia, al ámbito demarcado por las actividades protegidas y las prácticas ilícitas de trabajo enumeradas en la misma, y que, no estando el campo de violación de convenios colectivos reglamentado por la legislación federal, y sí por la local, no existía

cuestión de jurisdicción alguna —exclusiva o no— de la Junta Federal para conceder remedio alguno que impida violaciones a esos convenios.([1]) Uniformemente hemos seguido y citado con aprobación esta norma. *Junta Rel. del Trabajo* v. *I.L.A.*, 76 D.P.R. 829 (1954); *Junta Rel. del Trabajo* v. *Quiñones, Per Curiam* (resuelto el 12 de noviembre de 1954); *Junta Rel. Trabajo* v. *Simmons Int'l, Ltd.*, 78 D.P.R. 375 (1955); *Junta Relaciones del Trabajo* v. *Ortega*, 79 D.P.R. 760, 762 (1956); cfr. *Asoc. de Guardianes* v. *Bull Line*, 78 D.P.R. 714 (1955). Invocando las decisiones emitidas por el Tribunal Supremo federal en *Guss* v. *Utah L.R.B.*, 353 U.S. 1 (1957) y *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236 (1959), se nos pide que reexaminemos la anterior doctrina y sostengamos la hegemonía absoluta de la ley federal cuando se trata de una industria que se dedica al comercio interestatal.

## I

### LOS HECHOS

En 26 de octubre de 1959 la Unión de Empleados de la Industria del Teléfono, Sindicato de Trabajadores UPWA AFL-CIO formuló un cargo contra la Puerto Rico Telephone Co., imputándole haber cometido y estar cometiendo la práctica ilícita de trabajo definida en el Art. 8(1)(f) de la Ley de Relaciones del Trabajo de Puerto Rico, Núm. 130 de 8 de mayo de 1945, 29 L.P.R.A. sec. 69(1)(f), consistente en que desde el día 9 de julio anterior "violó y aun continúa violando los términos del convenio colectivo en su Artículo

---

([1]) En *Asoc. Empl. Bayamón Transit* v. *Junta Rel. Trabajo*, 70 D.P.R. 292 (1949), ya habíamos indicado que la Junta Estatal tenía jurisdicción únicamente cuando (1) el patrono comete una práctica ilícita de trabajo o lleva a cabo alguna otra conducta que no está enumerada en la Ley Federal, pero que está incluida en la local; (2) el negocio del patrono está exento bajo la Ley Federal o está sujeto a la Ley Estatal; y, (3) la Junta Federal cede jurisdicción a la nuestra conforme a las disposiciones de la sección 10(a) de la Ley Taft Hartley.

XV, Sección 5-b(²) al negarse a reunirse en el Comité de Quejas y Agravios a discutir el caso de Blanca Mounier quien fue suspendida de su trabajo." Se le notificó a la querellada la querella correspondiente, que fue finalmente enmendada en 17 de diciembre del mismo año para fundar el cargo de violación de los términos del convenio colectivo, no sólo en la negativa a reunirse en el Comité de Querellas, sí que también en la omisión de la Compañía de notificar de la separación a la Unión y a la empleada con una semana de anticipación, según prescrito por el párrafo 3 del artículo XX del convenio.(³) Entre los hechos expuestos se alegó que la empleada había sido "separada" de su empleo el día 7 de julio y que en la misma fecha se le notificó a la Unión.

---

(²) El artículo XV del convenio colectivo, que provee el procedimiento para querellas, dispone en su sección 5 como sigue:

"a) Si un empleado considera injusta su suspensión o separación, deberá presentar su querella a la Unión.

b) En caso de que la Unión también considere injusta la suspensión o separación del empleado, la Unión presentará una querella por escrito dentro de tres (3) días subsiguientes a la suspensión o notificación de separación del empleado, ante el Director de Relaciones Industriales de la Compañía.

c) La Compañía tendrá el derecho a llamar al Comité de Querellas a una reunión especial para resolver la querella.

d) Después de pasado el período de tres (3) días subsiguientes a la suspensión o notificación de separación del empleado, la Unión no podrá presentar una querella sobre dicha suspensión o notificación de separación y el caso se considerará cerrado.

e) Cualquier empleado que haya sido suspendido o separado y cuya suspensión o separación resulte injustificada a juicio del Comité de Querellas, será repuesto en su antiguo puesto sin menoscabo de sus derechos de antigüedad y la Compañía vendrá obligada a pagarle el dinero que hubiese dejado de devengar durante su suspensión o separación."

(³) Dicho artículo XX lee:

"ANTIGÜEDAD Antiguedad será el tiempo total de servicio acreditado a un empleado trabajando para la Compañía según se refleja en los archivos de la Compañía.

En casos de ascensos y separaciones (lay-offs) y de haber igualdad de condiciones, prevalecerá la antigüedad, sin embargo, ésta no limitará los derechos de la compañía a ascender o retener en su empleo a un empleado que, a juicio de la Compañía, tenga mayor habilidad, competencia o eficiencia y una mejor hoja de servicio, pero que tenga menos años de servicio.

La Compañía contestó la querella y alegó afirmativamente que el despido había tenido lugar el día 22 de junio y que se notificó de ello a la Unión "en o alrededor de dicha fecha"; aceptó no haber notificado de la separación a la Unión y a la empleada con una semana de anticipación, pero sostuvo que el Artículo XX del convenio era solamente aplicable a casos de separación (lay-offs), mas no a despidos. Adujo tres defensas especiales, a saber: 1—que la Junta carecía de jurisdicción para entender en el caso ya que la jurisdicción exclusiva correspondía a la Junta Federal de Relaciones del Trabajo; 2—íntimamente ligada con el planteamiento anterior, que la empleada concernida en 15 de septiembre había presentado ante la Junta Federal un cargo por práctica ilícita contra la compañía por despido discriminatorio debido a actividades sindicales([4]) "que a todos los efectos envuelve substancialmente los mismos hechos envueltos en la querella enmendada en este caso," y que en relación con el mismo el Director Regional rehusó expedir una querella formal después de practicar la investigación correspondiente, ([5]) por lo cual la empleada querellante había recurrido en revisión a la Junta Federal, encontrándose pendiente de decisión; ([6]) y 3) que la Unión no había dado cumplimiento a las disposiciones del Artículo XV del convenio

En caso de separaciones la Compañía notificará, con una (1) semana de anticipación a la Unión y al empleado. De la Unión no estar de acuerdo con alguna separación, podrá someter sus puntos de vista a la Compañía para que éstos sean discutidos y recurrir a cualquier procedimiento que establezca este Convenio."

([4]) Sección 8(a)(1)(3) de la Ley Federal de Relaciones del Trabajo, 29 U.S.C. sec. 158.

([5]) La determinación del Director Regional de fecha 22 de octubre al rehusar expedir querella que "la evidencia... no sostiene el cargo presentado... de que se discriminó por pertenecer o participar en actividades de o a favor de una organización obrera."

([6]) En 7 de enero de 1960 se sostuvo por el abogado (General Counsel) de la Junta Federal la determinación del Director Regional. Como ya se había celebrado la audiencia ante el examinador designado por la Junta Estatal, las partes estipularon este hecho mediante escrito al efecto.

porque no había presentado la correspondiente querella dentro de los tres días siguientes a la suspensión de la empleada.

Durante la vista celebrada ante el examinador designado por la Junta Estatal, la controversia en relación con los hechos giró primordialmente sobre el carácter de la suspensión del trabajo de la empleada, ya despido como sostiene la Compañía, o separación ("lay-off") como mantiene la Unión, y la fecha en que ello ocurrió. Se acepta que la querellada se negó a reunirse en el Comité de Querellas para discutir el caso de la empleada señora Mounier. En cuanto a estos extremos la Junta finalmente determinó que se trataba de una separación, y que la misma se decretó el día 7 de julio, por lo cual la petición de la Unión notificada dos días después estaba en tiempo.

En consecuencia, después de desestimar la impugnación de su jurisdicción, la Junta resolvió que la querellada había violado el convenio colectivo existente, en cuanto al artículo XV, al negarse a reunirse en el Comité de Querellas, y en cuanto al artículo XX, al omitir notificar de la suspensión a la Unión y a la empleada "separada" del empleo con una semana de anticipación. Bajo la autoridad del artículo 9(1) (b) de la Ley, 29 L.P.R.A. sec. 70(1) (b), se ordenó a la Puerto Rico Telephone Company en 17 de junio de 1960 a:

"1. Cesar y desistir de:

(a) En manera alguna violar los términos del convenio colectivo que tiene firmado o que firme con la Unión de Empleados de la Industria del Teléfono, Sindicato de Trabajadores, UPWA-AFL-CIO o con cualquiera otra organización obrera de sus empleados, incluyendo los Artículos XV y XX titulados respectivamente 'Procedimiento para Querellas' y 'Antigüedad'.

2. Tomar la siguiente acción afirmativa que consideramos efectúa los propósitos de la Ley:

(a) Someter a la consideración del Comité de Querellas a requerimiento de la Unión el caso de la empleada Blanca Rosa Mounier de Martínez para su revisión y adjudicación, a tenor con los Artículos pertinentes del convenio colectivo.

(b) Fijar en sitios conspicuos de su negocio a los cuales tengan acceso sus empleados, por un período no menor de treinta (30) días el Aviso a Todos Nuestros Empleados que se une y hace formar parte de esta Decisión y Orden, enviando copia de dicho aviso por correo certificado a la Unión de Empleados de la Industria del Teléfono, Sindicato de Trabajadores, UPWA-AFL-CIO.

(c) Notificar al Presidente de la Junta dentro de los diez (10) días siguientes a la fecha de la orden, qué providencias ha tomado para cumplir lo ordenado."

Mediante la petición autorizada por el Art. 9(2)(b) de la Ley, 29 L.P.R.A. sec. 70(2)(b), la querellada recurrió ante este Tribunal en solicitud de que se revise la orden transcrita, y después de reproducir la cuestión jurisdiccional planteada, apunta que la prueba aducida no sostiene las determinaciones de la Junta al efecto de que a) violó el artículo XX del convenio al separar a la empleada Mounier; b) dicha separación tuvo lugar el día 7 de julio de 1959; y, c) el artículo XV del convenio le imponía la obligación de reunirse con la Unión si ésta así lo solicitaba dentro del término fijado.

## II
### LA CUESTIÓN JURISDICCIONAL

1—En *Guss* v. *Utah L.R.B.*, 353 U.S. 1; *Amalgamated Meat Cutters* v. *Fairlawn Meats*, 353 U.S. 20, y *San Diego Bldg. Trades* v. *Garmon*, 353 U.S. 26, resueltos en 25 de marzo de 1957, el Tribunal Supremo federal sostuvo que un Estado no tenía facultad para intervenir en asuntos dentro de la jurisdicción de la Junta Federal de Relaciones del Trabajo, aunque ésta hubiese rehusado ejercitarla, a menos que mediara una cesión expresa de jurisdicción a tenor con las disposiciones de la sección 10 (a) de la Ley, 29 U.S.C. sec. 160(a). Se extendió así aún más el alcance de las decisiones emitidas en *Garner* v. *Teamsters Union*, 346 U.S. 485 (1953) y *Weber* v. *Anheuser-Busch*, 348 U.S. 468 (1955), que habían establecido la necesidad de la uniformidad, no

sólo de normas sustantivas en el derecho laboral federal, sino también en la administración de las mismas. A simple vista puede observarse que los casos de *Guss*, *Fairlawn Meats* y *San Diego Building Trades* son distinguibles de la cuestión que consideramos, ya que no se trata aquí de una situación sobre la cual la Junta Federal rehusa ejercer jurisdicción, sino que, por tratarse de una violación del convenio colectivo, carece de jurisdicción porque, como hemos anteriormente expuesto, tal violación no constituye una práctica ilícita bajo la Ley Federal.

El resultado inmediato de estas decisiones fue crear un área denominada "tierra de nadie" que requirió acción congresional consistente en la adición en la Ley de Reforma Obrera de 1959 (Labor Management Reporting and Disclosure Act of 1959) del inciso (c) a la Sección 14 de la Ley, 29 U.S.C. sec. 164, que autorizó a la Junta a declinar jurisdicción en "disputas obreras"(⁷) que envuelvan cualquier clase o categoría de empleados cuando en su opinión, el efecto de la misma sobre el comercio no sea sustancial; disponiendo además que en estos casos, "[n]ada en esta Ley se considerará como que impide a cualquier agencia o tribunal de un Estado o Territorio (incluyendo al Estado Libre Asociado de Puerto Rico, Guam y las Islas Vírgenes) asumir y ejercitar jurisdicción." El efecto práctico de esta enmienda no fue restringir la jurisdicción que ya tenían los organismos estatales —como por ejemplo, en el campo de violación de convenios— sino ampliarla para concedérsela en aquellos casos en que la Junta Federal se abstuviera —mayormente por razones de limitaciones presupuestales—de asumirla.(⁸)  ■

---

(⁷) Sobre la interpretación del término "disputas obreras" del inciso (c) de la Sección 14, véase, Hanley, *Federal-State Jurisdiction in Labor's No Man's Land: 1960*, 48 Geo. L. J. 709, 711-712 (1960).

(⁸) Sobre cuál es el momento apropiado para que las agencias o tribunales estatales asuman jurisdicción existen diferentes criterios: 48 Geo. L. J. 709, 734 (1960); 58 Mich. L. Rev. 288 (1959); 6 Vil. L. Rev. 80, 83 (1960).

Sin embargo, arguye la recurrente que, como para la fecha en que se inició el procedimiento ante la Junta Estatal, se encontraba pendiente de disposición final el cargo que la empleada perjudicada había radicado ante la Junta Federal, la agencia local no podía entender en el asunto. Todo el andamiaje de su posición descansa en su apreciación de que los hechos envueltos en ambos cargos "son los mismos". A poco que se examine la situación se verá cuán fragil es esta posición. Si bien es cierto que el despido o separación de la empleada concernida es el punto común de partida, el cargo presentado ante la Junta Federal se refiere al carácter discriminatorio del despido, mientras que la práctica ilícita imputada ante la Junta Estatal surge después del despido o separación, y como consecuencia de otra actuación patronal, su negativa a someter el despido o arbitraje según provisto en el convenio. No existe ni siquiera una imbricación; no surge conflicto jurisdiccional alguno. Cfr. *United Electrical R & M Wkrs.* v. *Worthington Corp.*, 236 F.2d 364 (CA 1, 1956); *United Electrical R & M Wkrs.* v. *General Electric Co.*, 231 F.2d 259 (CA DC 1956); *McAmis* v. *Panhandle Eastern Pipe Line Company*, 273 S.W.2d 789 (Mo. 1954). Véase Dunau, *Contractual Prohibition of Unfair Labor Practices: Jurisdictional Problems*, 57 Col. L. Rev. 52 (1957); Wellington, *Labor and the Federal System*, 26 U. Chi. L. Rev. 542 (1959). ■

Aduce además la Compañía que la negativa a reunirse con la Unión en el Comité de Querellas constituye una negativa a negociar, que a su vez, es una práctica ilícita según la sección 8(a)(5) de la Ley Federal, 29 U.S.C. sec. 158(a) 5. Es cierto que bajo ciertas circunstancias —o sea, cuando el patrono ignora totalmente una solicitud razonable de la unión para someter al procedimiento de arbitraje o de quejas y agravios una controversia relativa a la modificación, interpretación o administración del convenio sin ofrecer fundamento alguno que justifique su negativa— se evidencia el

deseo de actuar unilateralmente y de no negociar, *N.L.R.B.* v. *Sands Manufacturing Co.*, 306 U.S. 332 (1939) ; *United Telephone of the West*, 112 N.L.R.B. 779 (1955) ; *Carroll's Transfer Co.*, 56 N.L.R.B. 935 (1944). Sin embargo, en el presente caso no nos enfrentamos a un problema que requiriera la consideración de cuestiones sobre la modificación, interpretación o administración del convenio, sino meramente de la adjudicación por un comité de querellas sobre si la separación de la empleada Mounier estaba o no justificada. *Luce & Co.* v. *Junta Rel. Trabajo*, 86 D.P.R. 425 ; *N.L.R.B.* v. *Wooster Division of Borg-Warner Corp.*, 356 U.S. 342 (1958) ; *International Ladies' Garment* v. *N.L.R.B.*, 280 F.2d 616 (CA DC 1960) conf. en 366 U.S. 731 (1961). La mejor comprobación de ello es que la Compañía siempre descansó en que el Comité de Querellas no podía intervenir en el asunto debido a que la notificación al efecto hecha por la Unión era tardía. Además, como cuestión de hecho, la Compañía y la Unión celebraron varias reuniones con miras a resolver el problema de la empleada separada, y, según admisión del propio Director de Relaciones Industriales del patrono, se intentó gestionarle empleo en otros departamentos de la compañía.

2—Cuando es evidente o puede razonablemente presumirse que las actividades que un estado pretende reglamentar están protegidas por la sección 7 de la Ley Federal de Relaciones del Trabajo, o constituyen una práctica ilícita bajo la sección 8, el reconocimiento debido al estatuto federal requiere la inhibición de la jurisdicción estatal. Y si una actividad puede estar debatiblemente comprendida (*arguably subject*) a las secciones 7 u 8 de la Ley, tanto los estados como los tribunales federales deben ceder ante la competencia exclusiva de la Junta Federal, para evitar posibles conflictos de interpretación en la aplicación y administración de la política laboral nacional. *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236, 244 (1959) ; *Marine Engi-*

*neers* v. *Interlake* Co., 370 U.S. 173 (1962); *No Man's Land and Section 701(a)*, 6 Vil. L. Rev. 80 (1960); McCoid, *A Study of the "No Man's Land" of Labor Law*, 44 Minn. L. Rev. 205 (1959). Así, se ha aceptado la reglamentación estatal cuando se ha referido a una actividad de interés meramente marginal (*"peripheral concern"*) (⁶) de la Ley Federal, o cuando la conducta reglamentada está tan profundamente enraizada en áreas de interés y responsabilidad local (especialmente cuando la actividad envuelve el empleo de violencia o es de naturaleza criminosa) que, en ausencia de una clara indicación congresional contraria, no puede inferirse que el Congreso intentó privar a los estados de jurisdicción. *San Diego Building Trades Council* v. *Garmon*, supra, (págs. 243-244). Para que tenga lugar la inhibición estatal es preciso, pues, que se trate de una actividad protegida por la Sección 7 o que constituya una práctica ilícita definida en la Sección 8, y como hemos visto, tal no es el caso de la violación del convenio. Precisa tener en mente que la su-

---

(⁹) En cuanto a lo que constituye una actividad de interés meramente marginal de la Ley Federal, véanse, *Mine Workers* v. *Arkansas Oak Flooring Co.*, 351 U.S. 62 (1956) —huelga para obtener reconocimiento como unidad apropiada para la negociación colectiva—; *N.L.R.B.* v. *Borg-Warner Corp.*, 356 U.S. 342, 349-350 (1958); *Youngdahl* v. *Rainfair, Inc.*, 355 U.S. 131 (1957); *Bus Employees* v. *Wisconsin Board*, 340 U.S. 383 (1951) —huelga en apoyo de demandas de mejores condiciones en los términos de un convenio colectivo—; *Plumbers Union* v. *Door County*, 359 U.S. 354 (1959); *Hotel Employees Union* v. *Sax Enterprises, Inc.*, 358 U.S. 270 (1959); *Garner* v. *Teamsters Union*, 346 U.S. 485 (1953) —huelga pacífica—; *Freeman* v. *Retail Clerks Union* — Local No. 1207, 363 P.2d 803 (Wash. 1961), comentado en 48 Va. L. Rev. 133 (1962) —piquetes pacíficos; y en general, *Waxman* v. *Commonwealth*, 123 S.E.2d 381 (Va. 1962) rev. citando el caso *Garmon*, 370 U.S.—— (res. en 8 de octubre de 1962); 31 L.W. 3115. *De Veau* v. *Braisted*, 363 U.S. 144 (1960), criticado en 46 Minn. L. Rev. 437 (1961); *Teamsters Union 24* v. *Oliver*, 358 U.S. 283 (1959); *International Ass'n of Machinists* v. *González*, 356 U.S. 617 (1958); *Hill* v. *Florida*, 325 U.S. 538 (1945); *General Electric Co.* v. *Callahan*, 294 F.2d 60 (CA 1. 1961); comentado en 110 U. Pa. L. Rev. 620 (1962); *Local 248, U.A.W.* v. *Wisconsin Employment Relations Bd.*, 105 N.W.2d 271 (Wis. 1960), cert. deneg. 365 U.S. 878 (1961), comentado en Wis. L. Rev. 166 (1962). Michelman, *State Power to Govern Concerted Employee Activities*, 74 Harv. L. Rev. 641 (1961).

premacía federal (preemption) depende del tipo de conducta envuelta y no de la naturaleza del remedio solicitado, *International Union, U.A.W.* v. *Rusell,* 356 U.S. 634 (1958); *United Construction Workers* v. *Laburnmum Const. Corp.,* 347 U.S. 656 (1954); *Grunwald-Mark, Inc.* v. *Los Angeles Joint Board,* 343 P.2d 23 (Gal. 1959). Wellington, *Labor and the Federal System,* 26 U. Chi. L. Rev. 542 (1959); 35 Wash. L. Rev. 196 (1960), comentando *State* v. *International Brotherhood of Team., etc.,* 333 P.2d 924 (Wash. 1959); 58 Mich. L. Rev. 288 (1959). ■

La sección 301 de la Labor Management Relations Act de 1947, 29 U.S.C. sec. 185, autoriza a las cortes de distrito federales para entender en acciones por el quebrantamiento de convenios colectivos. No obstante, esta disposición estatutaria no priva a las cortes o agencias estatales de jurisdicción en acciones de igual naturaleza. *Dowd Box Co.* v. *Courtney,* 368 U.S. 502 (1962). La jurisdicción en este campo es concurrente.([10]) La historia legislativa de la sección mencionada demuestra que el Congreso rechazó expresamente una disposición incorporada en la versión original del Senado que estatuía la violación de convenios como una práctica ilícita sujeta a la jurisdicción de la Ley Federal, y que en la conferencia celebrada se decidió finalmente que el cumplimiento de los convenios se dejaría a los tribunales. H.R. Conf. Rep. Núm. 510, Octagésimo Congreso, págs. 41–42; *Textile Workers* v. *Lincoln Mills of Alabama,* 353 U.S. 448 (1957); *Association of Westinghouse Salaried Employees* v. *Westinghouse Electric Co.,* 348 U.S. 437 (1955). En *Teams-*

---

([10]) Solamente trece Estados—Colorado, Connecticut, Dakota del Norte, Hawaii, Massachusetts, Michigan, Minnesota, New York, Oregon, Pennsylvania, Rhode Island, Utah y Wisconsin, y el Estado Libre Asociado de Puerto Rico han aprobado legislación para reglamentar las relaciones obrero-patronales. Prentice-Hall, Labor Relations, State Laws, pág. 42001 *et seq.* De ahí que la formulación y desarrollo de la ley común federal en materia de derecho laboral a que se alude en *Textile Workers* v. *Lincoln Mills of Alabama,* 353 U.S. 448 (1957) dependerá en gran medida de las interpretaciones de las cortes de distrito federales.

*ters Local* v. *Lucas Flour Co.*, 369 U.S. 95, 101 (1962) se sostuvo que la doctrina Garmon no era relevante cuando se trataba de un pleito bajo la sección 301 por violación de un convenio. En igual sentido se manifiesta *Atkinson* v. *Sinclair Refining Co.*, 370 U.S. 238, 245 (1962). Y en *Lucas Flour* se dijo, en el escolio 9 (pág. 101), que "por supuesto, es cierto que la conducta que es una violación contractual puede constituir también una práctica ilícita, y lo que se ha dicho no implica *que el hecho de que un tribunal ponga en vigor una obligación contraída en virtud del convenio afecte la jurisdicción de la N.L.R.B. para conceder un remedio por la práctica ilícita, como tal.*" ▉

En Puerto Rico, donde por declaración expresa legislativa los convenios están revestidos de interés público, el foro adecuado para obtener el cumplimiento de las obligaciones contraídas en virtud de un convenio colectivo es la Junta Estatal de Relaciones del Trabajo, a través de la declaración como práctica ilícita de la violación de convenios, tanto por el patrono como por el empleado. Se sustrajo, pues, de la acción de los tribunales este aspecto del cumplimiento de convenios, reservándoseles, por supuesto, el campo de litigación en materia de daños por el quebrantamiento de los mismos,(11) por tratarse en este último caso de un asunto de puro interés privado de los contratantes. *Asoc. de Guardianes* v. *Bull Line*, 78 D.P.R. 714, 720 (1955). En el Art. 1 de la Ley, 29 L.P.R.A. sec. 62, se define la política pública en las siguientes palabras: "Es la política del Gobierno eliminar las causas de ciertas disputas obreras fomentando las prácticas y procedimientos de la negocia-

---

(11) En *Sinclair Refining Co.* v. *Atkinson*, 370 U.S. 195 (1962) se dijo que la sección 301(a) de la Ley Federal no derogó implícitamente la sección 4 de la Ley Norris-La Guardia que impide la intervención interdictal en casos que envuelvan o surjan de disputas obreras, aun cuando el injunction se solicite a guisa de un remedio para impedir la violación de un convenio.

ción colectiva y estableciendo un tribunal adecuado, eficaz e imparcial que implante esa política"  Cfr. Torres Peralta, *Federal Jurisdiction in Labor Relations under Section 301 of the Taft-Hartley Act: The Aftermath of the Lincoln Mills Decision*, 22 Rev. Col. Abog. P. R. 79 (1961).  Vale la pena repetir aquí el lenguaje utilizado en 1952 en la opinión del caso de *I.L.A.*, siete años antes del segundo caso *Garmon:* "Bajo cualquier circunstancia, el derecho establecido por la sección 301(a) fue conferido a las partes contratantes, y no puede de su texto, ni de su historia legislativa, inferirse que se intentó privar a los estados y territorios de ejercer su poder para reglamentar la conducta desdeñosa de las partes a ese convenio cuando tal conducta pone en peligro la vida misma de la comunidad por sus efectos nocivos en la estructura básica de su economía. . ." (A la pág. 644.)  Y por eso, nuestros legisladores —conscientes del impacto que representa el quebrantamiento de los convenios colectivos, con sus acciones concertadas concomitantes, en la incipiente economía industrial del país— optó por definir como práctica ilícita tanto del patrono como de la unión, la violación de convenios, y delegó en la Junta Estatal la facultad de darle efectividad y vigencia a la política pública para la protección de la comunidad que encarna tal pronunciamiento.  ▮

Como se verá por lo expuesto, la doctrina *Garmon* no tuvo el efecto de modificar en forma alguna el caso de *Junta de Relaciones del Trabajo* v. *I.L.A.*, supra, y a tenor con las interpretaciones posteriores de su alcance, más bien se ratifica la jurisdicción de la agencia local en la consideración de la violación de convenio como una práctica ilícita, no importa que se trate de una empresa dedicada al comercio interestatal.  La doctrina del caso de la I.L.A. permanece, pues, inalterada con el respaldo que le ofrece una clara política de lograr la paz industrial mediante el respeto de los acuerdos colectivos, y la consagración definitiva de la

jurisprudencia federal según anunciada en *Lucas Flour* y *Sinclair Refining Co.*, supra.([12])

## III

Las otras cuestiones levantadas por la peticionaria carecen de mérito y no es necesario discutirlas. Una lectura de la transcripción de los procedimientos habidos en la Junta Estatal nos convence de que no se cometieron los errores señalados. *Bendix Corp.* v. *N.L.R.B.*, 299 F.2d 308, cert. den. 370 U.S. 827 (1962), 31 L.W. 3112. ■

*No hay lugar a revocar o modificar la orden dictada por la Junta de Relaciones del Trabajo en el presente caso con fecha 17 de junio de 1960.*

---

([12]) No es necesario que entremos a discutir si en el ejercicio de esta jurisdicción, la Junta Estatal debe aplicar el derecho laboral federal o los principios de derecho estatales, pues en cuanto se refiere al punto específico envuelto en este caso, ambos coinciden: el respeto a la negociación colectiva y la eficacia de los procedimientos de arbitraje. Véanse, *Atkinson* v. *Sinclair Refining Co.*, 370 U.S. 238, 241 (1962); *Teamsters Local* v. *Lucas Flour Co.*, 369 U.S. 95 (1962); *Steelworkers* v. *American Manufacturing Co.*, 363 U.S. 564 (1960); *Steelworkers* v. *Warrior and Gulf Navigation Co.*, 363 U.S. 574 (1960); *Steelworkers* v. *Enterprise Wheel and Car Corporation*, 363 U.S. 593 (1960), comentados en 49 Geo. L. J. 373 (1960); Jay, *Arbitration and the Federal Common Law of Collective Bargaining Agreements*, 37 N.Y.U. L. Rev. 448 (1962); Meltzer, *The Supreme Court, Arbitrability and Collective Bargaining*, 28 U. Chi. L. Rev. 464 (1961); Beeson, *Boundaries of State-Federal Jurisdiction in Labor-Management Relations Under the New Labor Law — A Federal View*, 13 N.Y.U. Conf. on Labor 51, 55-61 (1960); Cox, *Reflections Upon Labor Arbitration*, 72 Harv. L. Rev. 1482 (1959).

Sobre la jurisdicción concurrente de los tribunales o agencias estatales y las cortes de distrito federales, se plantea un espinoso problema de traslado que se encuentra a punto de ebullición. Véase, *Tool and Die Makers* v. *General Electric Co.*, 170 F.Supp. 945 (1959), comentado en 12 Stan. L. Rev. 492 (1960); cfr. *Labor Relations Board of Puerto Rico* v. *Valencia Baxt Express, Inc.*, civil núm. 73-62 de la Corte de Distrito de Estados Unidos para Puerto Rico, resolución de 3 de mayo de 1962.