AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO, recurrente, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, recurrida; UNIÓN DE TRABAJADORES DE LA INDUSTRIA ELÉCTRICA Y RIEGO DE PUERTO RICO (INDEPENDIENTE), querellada.

*Número:* O-82-154    *Resuelto:* 23 de junio de 1982

*José F. Irizarry González* y *Nelson Márquez Lizardi*, abogados de la recurrente; *César Vélez*, abogado de la recurrida; *Reinaldo Pérez Ramírez*, abogado de la querellada.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

A solicitud de la Autoridad de Energía Eléctrica de Puerto Rico revisamos la resolución de la Junta de Relaciones del Trabajo de Puerto Rico (Caso Núm. CA-5874, D-871) que encuentra incursa en la práctica ilícita laboral de violar el Art. XIX del Convenio Colectivo negociado con la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (UTIER). 29 L.P.R.A. sec. 69(f). La infracción consistió en que la Autoridad dejó de cumplir con la obligación de satisfacer el pago de Licencia Por Accidente del Trabajo dispuesta en el convenio desde el 27 de diciembre de 1977 al 24 de abril de 1978 a todos aquellos empleados unionados acogidos a esa licencia y que así permanecieron durante ese período que coincidió con una huelga decretada por la Unión, en que hubo actos vandálicos de sabotaje, destrucción de propiedad, recriminaciones e imputaciones verbales y escritas y otras acciones destempladas.

Esencialmente la Autoridad argumenta la improcedencia de ese dictamen a base de que là licencia por accidentes del trabajo pactada en el Convenio Colectivo es un beneficio que goza de la naturaleza de salario y, como tal, durante una huelga, queda suspendido. Cuestiona la sabiduría del caso *E.L. Wiegand Division* v. *N.L.R.B.*, 650 F.2d 463 (1981), *cert.* denegado el 22 de febrero de 1982 (81-841), —en que se apoyó la Junta— alegando que los hechos son distinguibles del presente.

## I

Aunque gobernados por leyes especiales y tener finalidad distinta, por regla general la bilateralidad y el cumplimiento de las obligaciones recíprocas pactadas son notas sobresalientes en todo convenio colectivo. *Rivera* v. *Samaritano & Co., Inc.* 108 D.P.R. 604 (1979); *Luce & Co.* v. *Junta Rel. Trabajo,* 86 D.P.R. 425, 440 (1962); *Rivera Adorno* v. *Autoridad de Tierras,* 83 D.P.R. 258 (1961). La médula conceptual en la relación obrero-patronal clásica lleva al patrono a reconocer salarios y demás condiciones de trabajo a cambio del deber del obrero de desempeñarse fielmente en su empleo. De ahí que de ordinario se reconozca que durante una huelga general las obligaciones contractuales quedan en suspenso. Como resultado, en un período huelgario un patrono no está en el deber de pagar salarios y otros gastos de beneficios gremiales similares no devengados. Lo contrario representaría la absurda antinomia de compelerle a subvencionar una huelga contra sí mismo. *Ace Tank and Heater Co.,* 167 NLRB 663, No. 94, 66 LRRM 1129 (1967); *The Philip Carey Mfg. Co.,* 140 NLRB 1103, No. 90, 52 LRRM 1184 (1963); *General Electric Company,* 80 NLRB 510, No. 90, 23 LRRM 1094 (1948).

## II

La decisión de si determinado beneficio económico es o no equivalente al salario, depende de su naturaleza, propósito, razón de ser, enfoque de las partes y demás factores relevantes, en particular si son beneficios adquiridos por ser líquidos y exigibles en la fecha en que el patrono se niega a satisfacerlos. *Allied Industrial Wkrs., AFL–CIO LOC. U. No. 289* v. *N.L.R.B.,* 476 F.2d 868, 876 (1973). Sobre este extremo, la Junta concluyó correctamente, que si bien el Convenio Colectivo aplicable no disponía variaciones en los pagos de beneficios por accidente fundados en el criterio de antigüedad, los ". . . mismos eran líquidos y exi-

gibles por las siguientes razones: a) Los pagos de esta naturaleza no dependen de que haya o no trabajo disponible sino que su esencia se deriva de la incapacidad *per se* del empleado para realizar labor alguna; b) El convenio concedía tal derecho en atención al status de empleado 'regular' del recipiendario que estuviera incapacitado para realizar sus labores. Toda vez que un empleado regular ha cumplido previamente otros períodos de trabajo, consideramos que el beneficio del Artículo XIX toma en cuenta tales servicios rendidos; c) Estos beneficios no constituyen, en forma alguna, pago por servicios contemporáneamente prestados[; y] d) En tanto en cuanto el quid pro quo de estos beneficios es la incapacidad del beneficiario, la ocurrencia de una huelga no es factor relevante para cesar en su disfrute. El derecho termina cuando el empleado deja de estar incapacitado o cuando ha agotado el período pactado en el convenio o se convierta en inelegible bajo éste, para recibir los pagos, lo que ocurra primero". (Escolios omitidos.)

La Autoridad intenta desvirtuar este razonamiento aduciendo que el criterio de *E.L. Wiegand,* supra, es minoritario y se aparta de la trayectoria jurisprudencial de estimar por analogía todo beneficio marginal un salario. Nuestra reflexión sobre el particular nos mueve a concluir todo lo contrario: es un principio de vanguardia en materia laboral que reconoce unas diferencias intrínsecas reales y conceptuales. La licencia por accidentes del trabajo nace y se deriva de un accidente sufrido durante el trabajo por un empleado regular, cuyo hecho comprobado médicamente da *el derecho* a estar ausente del trabajo, con sueldo completo, hasta un máximo de ciento cuatro (104) semanas, prorrogable por cincuenta y dos (52) semanas más, a razón del ochenta (80%) por ciento del sueldo regular, aunque con descuento de la compensación semanal del Fondo del Seguro del Estado. El evento surge antes de que exista la huelga y su eficacia no está atada a que la Unión pueda después decretarla. Su razón de ser estriba en una *incapacidad* legí-

tima para trabajar que se concretiza en virtud de una condición física resultante de un accidente previo a la huelga, cuya condición continúa mientras subsiste la incapacidad o expira el término pactado. Limitar ese derecho a que exista o no trabajo es negar que sus efectos se extienden más allá del accidente que lo genera. Estamos ante un derecho adquirido cuya eficacia no puede hacerse depender de un estado de huelga como tampoco de que el empleado la rechace o endose.

Fue correcta la conclusión de la Junta de "que la Autoridad, al no pagar los beneficios por accidente correspondientes al período huelgario, incurrió en violación al Artículo XIX del convenio colectivo con relación a todos aquellos empleados que se encontraban accidentados al momento de la huelga y hasta el momento en que hubieran cesado en su incapacidad dentro de dicho período".

*Se dictará sentencia confirmatoria.*

Los Jueces Asociados Señores Torres Rigual y Rebollo López no intervinieron.