SENTENCIA
Este caso trata de una disputa obrero-patronal donde se plantea que es imperativa la abstención de los tribunales en la consideración de los méritos de la controversia suscitada entre las partes, para que sea la Junta de Relaciones del Trabajo la entidad que la atienda.
I
El 28 de septiembre de 2000 la Unión Independiente Auténtica (UIA o Unión) y la Autoridad de Acueductos y Alcantarillados (Autoridad) suscribieron un Convenio Colectivo (Convenio) para regir sus relaciones obrero-patro *604 nales a partir del 1 de julio de 1998, hasta el 30 de junio de 2003. El Art. XXV del Convenio disponía que la Autoridad habría de aportar a un plan médico o de salud para beneficio de los empleados unionados.
El plan médico contratado por la UIA fue el Plan de Salud de la UIA, Inc. (Plan). El Plan es una corporación sin fines de lucro creada con el propósito de brindar servicios de cuidados de salud a los empleados de la Autoridad que fuesen miembros de la UIA, así como a sus empleados jubilados. El Plan opera según las disposiciones de la Ley de Organizaciones de Servicios de Salud. Arts. 19.010-19.270 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sees. 1901-1927.
En agosto de 2004, luego de meses de negociación sobre los términos del nuevo convenio colectivo, la UIA decretó una huelga contra la Autoridad. Tras varias semanas en huelga, las partes llegaron a unos acuerdos parciales, entre los cuales se incluyó uno relacionado con el plan médico. En una estipulación de 18 de octubre de 2004 se dispuso, entre otras cosas, que los miembros de la Unión seleccionarían como su plan médico entre el Plan Médico de la UIA Inc., o el Plan Médico Triple S. La Autoridad se comprometía en este “acuerdo” a que sus aportaciones al Plan comenzarían a hacerse a partir del mes de octubre de 2004. Este acuerdo, sin embargo, no fue firmado por los representantes de las partes.
Posteriormente, el 28 de diciembre de 2004 la Unión y la Autoridad suscribieron y firmaron una nueva estipulación en la cual se especificó que permanecían vigentes las disposiciones referentes al plan médico consignadas en la estipulación del 18 de octubre de 2004 y lo dispuesto sobre el plan médico en el Convenio suscrito en 2000.
En junio de 2005, la Unión, la Autoridad y el Plan suscribieron un documento titulado Documento Aclaratorio, en el cual, entre otras cosas, la Autoridad se comprometió a remitir “al Plan de Salud UIA las aportaciones correspon *605 dientes a los meses de enero a mayo de 2005”. Petición de certiorari, Apéndice, pág. 104. El acuerdo dispuso también que la Autoridad reanudaría sus aportaciones pendientes al Plan a partir del 1 de junio de 2005, así como las aportaciones mensuales, sujeto a varias condiciones acordadas.(1) La Autoridad no reanudó el pago de dichas aportaciones.
Así las cosas, el 3 de noviembre de 2005 el Plan presentó ante el Tribunal de Primera Instancia una demanda de sentencia declaratoria y solicitud de injunction contra la Autoridad y la UIA, reclamando los dineros adeudados por concepto de primas del plan de seguro. Se requirió de la Autoridad el pago de la cantidad de $6,426,225, y de la Unión requirió el pago de $2,659,950, adeudado por el mismo concepto.
La Autoridad se opuso a lo solicitado por el Plan por entender que el tribunal no tenía jurisdicción para atender la disputa y porque el remedio solicitado era improcedente en derecho. La Autoridad argüyó que de estimarse que el Convenio suscrito entre ésta y la Unión estaba vigente, la suspensión de las aportaciones del patrono al plan médico de los empleados debía calificarse como una práctica ilícita del trabajo, por lo que la jurisdicción primaria para atender en esta controversia le correspondía a la Junta de Relaciones del Trabajo del Departamento del Trabajo y Re *606 cursos Humanos. En la alternativa, indicó que de concluirse que el Convenio no estaba vigente, el tribunal carecía de jurisdicción para dictar remedio interdictal alguno, ya que la práctica objetada constituiría una disputa obrero-patronal y la Ley Núm. 50 de 4 de agosto de 1947 (Ley Núm. 50), 29 L.P.R.A. sec. 101 et seq., prohíbe la concesión de tal remedio extraordinario en disputas laborales.
El foro primario rechazó el planteamiento de la Autoridad al concluir que el caso versaba sobre el incumplimiento de una obligación contractual asumida por el patrono, la Unión y el Plan en relación con los servicios de salud. Por otro lado, dispuso que no aplicaba la Ley Núm. 50, ya que la parte demandante en el caso, el Plan, no era ni patrono, ni empleado, ni organización obrera. En vista de tal determinación, procedió a señalar la vista de injunction correspondiente.
Celebrada la vista, el tribunal emitió una resolución el 9 de noviembre de 2005, concediendo el injunction preliminar solicitado. Ordenó también a la Autoridad pagar al Plan las aportaciones adeudadas entre junio a noviembre de 2005. La resolución dictada no le ordenó a la Unión a pagar el dinero adeudado por ésta al Plan.
Insatisfecho con la determinación del foro primario, la Autoridad presentó, en esa misma fecha, un recurso de certiorari ante el Tribunal de Apelaciones. En el recurso presentado se plantearon, esencialmente, los mismos señalamientos esgrimidos ante el tribunal de instancia. Luego de varios trámites procesales, el Tribunal de Apelaciones dictó su sentencia el 22 de noviembre de 2005, confirmando la determinación del Tribunal de Primera Instancia.
Nuevamente en desacuerdo, la Autoridad presentó el correspondiente recurso de certiorari ante este Tribunal, el cual se acompañó con una moción en auxilio de jurisdicción.(2) En el recurso presentado, la Autoridad se *607 reiteró en sus argumentos de falta de jurisdicción sobre la materia e improcedencia del remedio dictado.
En su escrito ante nosotros el Plan argüyó que este caso no versaba sobre una disputa obrero-patronal, por lo que no aplica la Ley Núm. 50. El Plan indicó que no tenía relación de empleado con la Autoridad ni que era miembro de la unidad apropiada, sino que operaba como una entidad independiente de ambas. En vista de ello, la controversia planteada no podía catalogarse como de carácter obreropatronal. Sostiene entonces que se trata, llana y sencillamente, de un asunto de incumplimiento de parte de la Autoridad con los acuerdos pactados.
La Unión, por su parte, esgrime fundamentalmente los mismos señalamientos que el Plan. Argumenta, sin embargo, que de estimarse que la jurisdicción primaria le corresponde a la Junta de Relaciones del Trabajo, procede preterir el cauce administrativo, habida cuenta que la Constitución del Estado Libre Asociado de Puerto Rico reconoce el derecho de los trabajadores a estar protegidos contra riesgos a su salud en su trabajo o empleo.
El 5 de diciembre de 2005, el Plan presentó una moción en auxilio de jurisdicción ante este Tribunal solicitándonos *608 que le ordenáramos a la Autoridad a pagar la deuda en concepto de primas hasta entonces adeudada, pues de lo contrario se afectaría la solvencia del Plan. El 8 de diciembre de 2005 expedimos el auto solicitado y le ordenamos a la Autoridad a pagar al Plan el dinero reclamado en la moción de 5 de diciembre.(3)
Posteriormente, la Oficina de la Comisionada de Seguros solicitó comparecer como amiga de la corte; solicitud, a la cual accedimos.
Poco después, el Plan nos solicitó que diéramos el caso por sometido a tenor con la Regla 50 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A. Tanto la Autoridad como la UIA se allanaron a la petición del Plan.
Atendidos los múltiples escritos presentados por las partes y por la Comisionada de Seguros, pasamos a resolver.
hH h-H
La controversia en este caso requiere que determinemos a quién le corresponde atender la controversia que se generó entre la Autoridad, la Unión y el Plan referente al pago de las primas del plan de salud de los empleados de la Autoridad. Por las razones que enumeramos, resolvemos que la jurisdicción para atender y resolver la controversia le corresponde a la Junta de Relaciones del Trabajo, por lo cual el tribunal de instancia no tenía jurisdicción para dictar el injunction que le fue solicitado. Veamos.
La política pública afirmada a través de la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945 (29 L.P.R.A. sees. 62-64 y 65-76), promueve la paz industrial por medio de la negociación colectiva. “Es *609 la política del Gobierno eliminar las causas de ciertas disputas obreras, fomentando las prácticas y procedimientos de la negociación colectiva y estableciendo un tribunal adecuado, eficaz, e imparcial que implante esta política.” 29 L.P.R.A. see. 62(4).
A tenor con tales propósitos, la Ley de Relaciones del Trabajo de Puerto Rico creó la Junta de Relaciones del Trabajo de Puerto Rico (Junta) como el foro o “tribunal adecuado” para velar por el cumplimiento de las obligaciones contraídas en virtud de un convenio colectivo y evitar que cualquier persona incurra en prácticas ilícitas del trabajo. Para cumplir con tal encomienda, se le confirió jurisdicción exclusiva a la Junta sobre estos asuntos. Esta facultad de la Junta no puede ser afectada por ningún otro medio de ajuste o prevención, salvo circunstancias especiales. 29 L.P.R.A. sec. 68(a); Martínez Rodríguez v. A.E.E., 133 D.P.R. 986, 994 (1993); P.R.T.C. v. Unión Indep. Emp. Telefónicos, 131 D.P.R. 171, 188 (1992).
De este modo, se sustrajo de los tribunales las controversias relacionadas con el cumplimiento de los contratos obrero-patronales. El legislador estimó que sólo un organismo especializado y diseñado exclusivamente para ese propósito, como es la Junta, podría dar plena eficacia a los derechos de organización y de negociación colectiva. P.R.T.C. v. Unión Indep. Emp. Telefónicos, supra, págs. 188 y 190; F.S.E. v. J.R.T., 111 D.P.R. 505, 513 (1981); Puerto Rico Telephone v. Junta Rel. Trabajo, 86 D.P.R. 382, 395 (1962).
De otra parte, hemos indicado que cualquier actividad o actuación realizada por el patrono o la unión que interfiera o restrinja los derechos de los obreros a organizarse y a negociar colectivamente, se considera una práctica ilícita del trabajo sujeta a la jurisdicción exclusiva de la Junta. F.S.E. v. J.R.T., supra, pág. 512. Así, hemos expuesto que “nuestros legisladores —conscientes del impacto que representa el quebrantamiento de los convenios colectivos, con sus acciones concertadas concomitantes, en la incipiente *610 economía industrial del país— optó por definir como práctica ilícita tanto del patrono como de la unión, la violación de convenios, y delegó en la Junta Estatal la facultad de darle efectividad y vigencia a la política pública para la protección de la comunidad que encarna tal pronunciamiento”. P.R. Telephone v. Junta Rel. Trabajo, supra, pág. 396.
Específicamente, la Ley de Relaciones del Trabajo de Puerto Rico fue enmendada para añadir como práctica ilícita del trabajo aquellas circunstancias en las que el patrono “[s]uspenda o demuestre la intención de suspender los pagos por concepto de seguros y planes médicos de los empleados y dependientes de éstos, mientras se esté negociando un nuevo convenio colectivo o durante una huelga, siempre que haya mediado previamente una petición escrita al patrono por parte de la unión que los representa para que aquél continúe efectuando los referidos pagos”. (Énfasis nuestro.) Ley Núm. 97 de 15 de julio de 1988 (29 L.P.R.A. sec. 69(l)(k)). Véase A.E.E. v. J.R.T., 113 D.P.R. 234 (1982) (donde se resolvió que no pagar los beneficios por accidente durante el período de huelga constituye una violación a las disposiciones de un convenio colectivo).
Aun cuando el convenio colectivo, como norma general, establece la relación laboral entre un patrono y sus empleados —representados por la unión— los acuerdos que allí se plasman pueden incidir sobre variados intereses. La provisión de servicios médicos a través de un plan de salud para los miembros de un taller unionado representa una conquista de los empleados en el proceso de negociación. Como es evidente, ello habrá de requerir que se ejecuten pagos a la aseguradora para así cumplir con el acuerdo laboral.
Ahora bien, que intervenga una aseguradora, como en este caso, no desvirtúa la naturaleza de la disputa obrera. A tales efectos, la Ley de Relaciones del Trabajo de Puerto Rico define “disputa obrera” como
*611 ... cualquier controversia relativa a los términos, tenencia o condiciones de empleo o en relación con la organización o representación de empleados o sobre negociación, fijación, mantenimiento, cambio o esfuerzo para convenir términos o condiciones de empleo, estén o no los disputantes en la relación inmediata de patrono y empleado. (Enfasis nuestro.) 29 L.P.R.A. see. 63(6).
Lo importante es que el asunto planteado se refiera o esté estrechamente vinculado con los derechos que se reconocen y establecen en la Ley de Relaciones del Trabajo de Puerto Rico, independientemente de si los disputantes están “en la relación inmediata de patrono y empleado”. En estos casos la jurisdicción exclusiva es de la Junta, ya que “[s]us funciones son estrictamente las de realizar los propósitos públicos de la Ley de Relaciones del Trabajo y sus órdenes van dirigidas a vindicar el interés público y no intereses privados”. U.T.I.E.R. v. J.R.T., 99 D.P.R. 512, 528 (1970). Debido a ello, cuando se trate de corregir una práctica ilícita del trabajo, de las enumeradas en nuestra legislación laboral, corresponde a la Junta la jurisdicción para dilucidar la controversia. Véase Asoc. de Guardianes v. Bull Line, 78 D.P.R. 714, 719-720 (1955).
Con este trasfondo, repasemos nuevamente los hechos atinentes a esta controversia, previo a la aplicación de los hechos al Derecho expuesto.
h-J hH I—1
El Art. XXV del Convenio Colectivo proveía para la aportación de las primas de un plan médico o de salud por parte de la Autoridad en beneficio de los empleados unionados que así lo requiriesen. Como se indicó, la Unión contrató el Plan para brindarles servicios médicos a los empleados unionados de la Autoridad.
Mientras se negociaba un nuevo convenio colectivo, surgieron conflictos en cuanto a varias cláusulas del Convenio, lo que culminó en un decreto de huelga por parte de la *612 UIA. Luego de varias semanas en huelga, el patrono y la Unión realizaron varios acuerdos o estipulaciones para poner fin a la huelga y continuar con la negociación del nuevo convenio colectivo. En la primera estipulación de 18 de octubre de 2004, la cual no fue firmada por el Plan, se acordó que la Autoridad aportaría, a partir de octubre de 2004, las primas de los empleados que prefirieran unirse al Plan.(4) Se hizo la salvedad que continuarían aplicando los artículos y las disposiciones del Convenio referente al seguro médico que no hubiesen sido modificados por la estipulación anterior.
Posteriormente, las partes se reunieron y firmaron el Documento Aclaratorio, esta vez firmado también por el presidente del Plan, para acordar la manera y las condiciones bajo las cuales la Autoridad pagaría las primas del plan de salud, según disponía el Convenio. El hecho de que el funcionario del Plan haya firmado el referido documento, no desvirtúa la naturaleza de las negociaciones obrero-patronales para proveerle a los unionados el beneficio a un plan médico acordado bajo el Convenio. Los acuerdos que se hicieron con posterioridad al contrato laboral, y mientras se negociaba el nuevo convenio colectivo, deben atenderse como un todo y no como un contrato privado individual entre el Plan y la Autoridad. Tanto la estipulación de 18 de octubre de 2004 como el Documento Aclaratorio están inexorablemente atados a las negociaciones que se llevaban a cabo sobre las relaciones obreropatronales. El hecho de que dentro de las negociaciones se lleguen —de manera incidental— a distintos acuerdos para facilitar la negociación y evitar los conflictos propios de una huelga, no desvirtúa su naturaleza, con el fin de conceder jurisdicción original al foro judicial.
No nos convence, por lo tanto, el argumento del Plan y de la Unión de que estamos frente a un caso de incumpli *613 miento con los acuerdos convenidos y no frente a una disputa obrero-patronal. Ello requeriría que obviáramos el proceso de negociación complejo que llevaba a cabo la Unión y la Autoridad previo a la firma de la estipulación. No hay duda que los derechos que se negociaron en la estipulación son parte de las obligaciones recíprocas entre patrono y empleado que se negociaron originalmente con el convenio colectivo y que formaban parte de las negociaciones.
De otra parte, la Ley de Relaciones del Trabajo de Puerto Rico regula los asuntos o las controversias que surgen en el contexto de la relación obrero-patronal, indistintamente de que las partes involucradas que reclamén un derecho estén o no “en la relación inmediata de patrono y empleado”. 29 L.P.R.A. sees. 63(6) y 109(c). Lo imprescindible para determinar si una controversia constituye o no una disputa obrero-patronal no es quién plantea el asunto, sino de dónde surgen los derechos reclamados. Como he-mos visto, en este caso el derecho reclamado surge del convenio colectivo y de los acuerdos pactados por las partes mientras negociaban un nuevo convenio colectivo.
Mediante el presente pleito se pretende obligar al patrono a pagar las sumas alegadamente adeudadas por concepto de aportaciones en beneficio de los empleados acogidos al Plan. La Ley de Relaciones del Trabajo de Puerto Rico expresamente prohíbe la conducta desplegada por el patrono —e.g., la suspensión por el patrono de los pagos correspondientes a un seguro médico para los empleados durante la huelga o la negociación de un nuevo convenio— por lo que nos encontramos ante una actividad concertada protegida cuya jurisdicción primaria es exclusiva de la Junta. Por lo tanto, los foros judiciales carecían de jurisdicción para dilucidar inicialmente si el patrono había incurrido en la práctica ilegal de cancelar los pagos correspondientes al plan médico mientras se negocia un nuevo convenio colectivo o durante una huelga.
*614 Por otro lado, no podemos avalar la tesis de que no estamos ante una práctica ilícita del trabajo, ya que los empleados han tenido disponible un plan médico mientras las partes están en pugna. No hay nada en la disposiciones legales aplicables que permitan establecer una diferencia entre la suspensión de pagos de primas que conlleve la cancelación inmediata de los servicios de salud para los empleados y una situación mediante el plan médico continúa brindando los servicios, a pesar de la suspensión de los pagos por parte del patrono. Por el contrario, el texto claro de la enmienda al Art. 8 de la Ley Núm. 130, supra, configura como práctica ilícita “la intención de suspender los pagos por concepto de seguros y planes médicos de los empleados y dependientes de éstos ...”. 29 L.P.R.A. see. 69(l)(k). Por consiguiente, sería contrario a los claros propósitos de la legislación obrera concluir que su aplicabilidad se circunscribe a situaciones en las cuales los empleados se queden sin los beneficios del plan.(5)
Forzoso resulta concluir que la demanda presentada ante el tribunal de instancia imputaba una práctica ilícita de trabajo, según el Art. 8(l)(k) de la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 69(l)(k). Correspondía a la Junta, por lo tanto, dilucidarlo en el ejercicio de la jurisdicción exclusiva que sobre dicha materia la ley ex-presamente le ha conferido.(6) Las partes estaban impedidas de preterir el cause administrativo. Cabe señalar que la Junta de Relaciones del Trabajo de Puerto Rico está fa *615 cuitada para, en el ejercicio de su discreción y mientras dilucida esta controversia, dictar cualquier orden que es-time necesaria y apropiada para hacer efectiva sus prerrogativas. Véase 29 L.P.R.A. secs. 68-70. Véase Reglamento Núm. 2 de la Junta de Relaciones del Trabajo de Puerto Rico de 8 de julio de 1957, Reglamento Núm. 17 del Departamento de Estado.

Se dicta sentencia mediante la cual se revoca la sentencia dictada por el Tribunal de Apelaciones y se resuelve que la jurisdicción para atender en esta controversia le corresponde, en primera instancia, a la Junta de Relaciones del Trabajo de Puerto Rico.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada Señora Fiol Matta disintió con una opinión escrita, a la cual se le unió el Juez Asociado Señor Fuster Berlingeri. El Juez Asociado Señor Rebollo López no interviene.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 El Documento Aclaratorio disponía, en su See. 3, lo siguiente:
“3. Como parte de este compromiso de la Unión Independiente Auténtica, la Autoridad de Acueductos y Alcantarillados remitirá al Plan de Salud UIA las aportaciones correspondientes a los meses de enero a mayo de 2005. La AAA reanudará las aportaciones pendientes al plan del 1 de junio del 2005 en adelante sujeto a los siguientes incisos.
“a. El Plan someterá no más tarde del 31 de julio de 2005 la información requerida por la Oficina de Comisionada de Seguros (OCS).
“b. Tan pronto se reciba la certificación sobre la solvencia financiera del Plan, la AAA remitirá al Plan de Salud la aportación correspondiente al mes de junio de 2005.
“c. De surgir un menoscabo atribuible a las razones expuestas en el inciso 2 y una vez cubierto el mismo, la AAA reanudará las aportaciones mensuales.
“d. De concluir la auditoría de la OCS sin señalamiento de menoscabo, la AAA reanudará las aportaciones mensuales a partir del 1 de junio de 2005.” Petición de certiorari, Apéndice, pág. 104.

 En el escrito presentado, la Autoridad de Acueductos y Alcantarillado (Autoridad) nos planteó la comisión de cuatro errores, a saber:
*607 “Erró el TA al concluir que pendiente la negociación de un nuevo convenio colectivo, base de la obligación de la AAA de pagar el plan médico a los empleados unionados de la UIA, la negativa de remitir los pagos por concepto de planes médicos no es materia de la jurisdicción exclusiva de la Junta de Relaciones del Trabajo. Esto a pesar de que la Ley de Relaciones del Trabajo, Ley 130 del 8 de mayo de 1945, claramente define en su sección 69(l)(k) esta conducta como una práctica ilícita del trabajo. 29 L.P.R.A. sec. 69(l)(k).
“Erró el TA al no reconocer que expresamente en la sección 102(C) de la Ley anti-injuention de Puerto Rico impide a los tribunales emitir una orden de interdicto para ‘pagarle, darle o retenerla a cualquier persona participante o interesada en dicha disputa, cualesquiera beneficios, seguro de huelga, u otro dinero o cosa de valor’. 29 L.P.R.A. sec. 102(C).
“Erró el TA al concluir que no son de aplicación los principios antes discutidos ya que el Plan UIA tiene personalidad jurídica independiente de la UIA. Para los fines de la sección 109(B) del Título 29, Plan UIA sigue siendo una asociación ‘participante o interesada en una disputa obrera’. 29 L.P.R.A].] sec. 102(B).
“Erró el TA al concluir que es de aplicación el principio de equidad sobre los actos propios el cual s[ó]lo es pertinente en ausencia de ley aplicable al caso. Véase Artículo 7 del Código Civil, 31 L.P.R.A. see. 7.” Petición de certiorari, págs. 8-9.

 En cuatro ocasiones posteriores, el Plan de Salud de la UIA, Inc. (Plan) compareció ante nosotros para solicitamos que le ordenásemos a la Autoridad que remitiera al Plan las primas del seguro médico de sus empleados que se iban acumulando. En cada ocasión accedimos a lo solicitado.

 Los acuerdos contenidos en esta estipulación fueron firmados por el Plan de Salud de la UIA, Inc. (UIA) y la Autoridad el 28 de diciembre de 2004.

 Por otro lado, la opinión disidente entiende que el presente pleito es de cobro de dinero por los servicios prestados por el Plan. Sin embargo, aquí el recurrido reclama que se le paguen las aportaciones patronales que surgen de un beneficio otorgado en el convenio colectivo. Además, no existen documentos que nos muevan a pensar que en realidad lo que se pretende es cobrar los servicios médicos ya prestados a los unionados suscritos al Plan. Lo anterior demuestra patentemente que estamos ante una situación que figura dentro de los propósitos de la Ley de Relaciones del Trabajo de Puerto Rico.

 Siendo la Junta de Relaciones del Trabajo el organismo con jurisdicción para atender la controversia del presente pleito, resulta innecesario discutir la procedencia del injunction en disputas obreras, a tenor con la Ley Núm. 50 de 4 de agosto de 1947 (29 L.P.R.A. sec. 101 et seq.).